**Leonel Torres HERRERA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 69002.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 31, 1984.

Rehearing Denied Jan. 16, 1985.

**316**

Will Gray (on appeal only), Houston, for appellant.

Reynaldo S. Cantu, Jr., Dist. Atty., Brownsville, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

This is an appeal from a conviction of capital murder. The jury answered in the affirmative the special issues submitted at the punishment stage of the trial pursuant to Art. 37.071, V.A.C.C.P., and the trial court assessed punishment at death.

The appellant presents eight grounds of error. Appellant complains in four grounds of error that the pre-trial and in-court identification of him as the perpetrator of this offense violated appellant's constitutional rights; he objects to the admission of a dying declaration; he further objects to the admission, during the punishment phase of the trial, of certain threatening statements made by appellant which he alleges were "fruits" of an interrogation in violation of *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966); he objects to testimony at the punishment phase of the trial regarding an assault on a news correspondent during appellant's arraignment on a non-related charge for which he was subsequently acquitted. Having reviewed the record and arguments of counsel and finding no reversible error, we affirm.

While appellant does not challenge the sufficiency of the evidence to support his conviction, we nonetheless will provide a detailed description of the pertinent facts in order to illuminate the legal issues appellant does raise.

Appellant was charged with the capital murder of a Los Fresnos city police officer. See V.T.C.A. Penal Code, Sec. 19.03(a)(1). The testimony at trial established that on the evening of September 29, 1981 a DPS officer (Rucker) and a Los Fresnos city police officer were shot and killed, within ten to twenty minutes of each other, along a desolate 6.2 mile stretch of highway. Enrique Hernandez was riding with Officer Carrisalez, the Los Fresnos officer, and witnessed the offense which forms the basis of appellant's conviction. The testimony at trial showed that the witness Hernandez positively identified appellant as the perpetrator of the offense. Immediately after Carrisalez' shooting, Hernandez radioed in a description of appellant and his vehicle. Carrisalez had previously radioed in the license plate number "WBZ 143"; this was subsequently corrected to "XBZ 143" (it is unclear from the record whether Carrisalez radioed in the wrong number or the dispatcher incorrectly noted the number.) Local law enforcement officers familiar with appellant determined that the description of the offender and the vehicle matched appellant and a vehicle he was known to drive and immediately obtained an arrest warrant. Upon executing the warrant the officers found the vehicle but not the appellant. The vehicle, described by Hernandez, bore license plate number "XBZ 143" and was registered to appellant's "live-in" girlfriend. She gave the officers permission to search the car. Upon inspection, the left side of the vehicle had what appeared to be blood stains;

blood was also found on the driver's side of the seat and floorboard. Also found in the vehicle were personal papers of the appellant and some spent shotgun shells. Forensic tests subsequently showed that the blood stains were type A; the same blood type as DPS officer Rucker.

Further testimony at trial established that Officer Rucker had been shot and killed within ten minutes of the time appellant was stopped by officer Carrisalez; a vehicle matching the description of appellant's vehicle was observed during the pertinent time period by several witnesses driving along the highway between where Rucker's body was found and where Carrisalez was shot.

Appellant was arrested on October 4, 1981. When an officer attempted to interrogate appellant, appellant demurred that "it was all in the letter" and suggested to police that they read a letter if they wanted to know what happened. He then invoked his Sixth Amendment right to counsel. Police then inventoried appellant's belongings and located six envelopes upon which appellant had written a letter essentially admitting and offering an explanation for both police killings.

Appellant by way of three grounds of error challenges the pre-trial identification procedures used and claims that Hernandez' in-court identification should have been struck and a mistrial granted, as same was based upon impermissibly suggestive pre-trial procedures which led to a substantial likelihood of irreparable misidentification.

On direct examination by the State, Hernandez testified, *without objection*,[1] that he was specially trained in the army to identify certain missile systems with the naked eye, thereby establishing special training in observation and identification techniques. Hernandez testified that he had an opportunity to observe the appellant for at least 14 seconds with the aid of a police spotlight and car headlights illumi-

nating the appellant and his vehicle. Immediately after the offense Hernandez provided police with an accurate description of both appellant and his vehicle.

The offense occurred at approximately 11:00 p.m. on the evening of September 29, 1981. On September 30 Hernandez selected three possible suspects, including the appellant, from a photographic display. The record further reflects that two officers from the Los Fresnos police department, fearing that Carrisalez had suffered a heart attack and was not going to survive, obtained a positive identification of the appellant from Carrisalez, showing him one picture in his hospital room. Subsequently, on October 1, these same officers showed this photograph to Hernandez, who then made a positive identification of appellant. The record is devoid of any indication that the showing of one picture of appellant to Hernandez was accompanied by any overt suggestiveness by police authorities. Hernandez further positively identified the appellant on October 6, 1981 from a photographic display and on October 24, 1981 in a live lineup attended by appellant's attorney. Hernandez was unwavering in his in-court identification and repeatedly testified that his identification of appellant was based upon his observations at the time of the offense. Finally, we note that all the testimony regarding the out of court pretrial identification procedures came in by virtue of appellant's cross-examination. The State in no way attempted to bolster Hernandez' in-court identification.

In 1967 the United States Supreme Court, in a trilogy of cases, laid down the federal constitutional standard as regards the identification of an accused. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In these cases the Supreme Court

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

held that a criminally accused citizen was deprived of due process if he was not offered the opportunity to have his counsel present during a pre-trial show up. However, in *Wade,* supra, the Court determined that the in-court identification of an accused would be inadmissible unless it could be shown by clear and convincing evidence that the in-court identification was based upon observations at the time of the offense. Factors the Supreme Court considered relevant include: (1) the witness' prior opportunity to observe the criminal act; (2) any discrepancy between the pre-lineup description and defendant's actual appearance; (3) whether the witness has identified another individual prior to the alleged illegal lineup; (4) prior identification by the witness of the accused; (5) failure to identify the accused prior to the suggestive lineup; (6) amount of time elapsed between the crime and the alleged illegal lineup. *Wade,* supra. Whereas the Supreme Court has found that testimony regarding the out of court illegal lineup is per se inadmissible, *Gilbert,* supra, testimony regarding the in-court identification may be admissible depending upon the totality of the circumstances. *Stovall v. Denno,* supra.

In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, (1968) the Supreme Court first applied the standards enunciated in the *Wade* trilogy the term before to photographic displays prior to arrest and determined that the *Stovall* totality of the circumstances review would be applicable to testimony regarding pre-trial photo lineups. While recognizing the inherent dangers of misidentification in such procedures the Court refused to adopt a blanket rule prohibiting such testimony; instead each case must be judged individually. The Court specifically held that "a conviction based on eyewitness identification at trial following a pre-trial identification by photo will be set aside ... only if the photo identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification"; *Simmons,* supra, at 384 and 971. The Supreme Court also noted

that while showing one photograph was somewhat suggestive and to be frowned upon, that Court nonetheless recognized the sometimes inherent necessity of such a procedure. The severity of the crime and the need to quickly apprehend the assailants may make such a procedure necessary and not impermissible per se. See also *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Writt v. State,* 541 S.W.2d 424 (Tex.Cr.App.1976).

This Court has routinely followed the Supreme Court in this area of criminal law. In *Martinez v. State,* 437 S.W.2d 842 (Tex.Cr.App.1969) this Court followed the holdings of the Supreme Court and found that the in-court identification will only be inadmissible if the State fails to show by clear and convincing evidence that the identification is not tainted. The initial determination of taint is for the trial court to make. However, a defendant who claims on appeal that a trial court erred in allowing in-court identification has a difficult and heavy burden. Unless it is shown by clear and convincing evidence that the complaining witness' identification was irreparably tainted, this Court will not reverse a conviction on these grounds. *Jackson v. State,* 628 S.W.2d 446 (Tex.Cr.App.1982).

As in *Simmons,* supra, we find that exigent circumstances required the showing of a single photograph to Hernandez. As in *Simmons,* supra, a very serious offense had been committed and the perpetrator was at large; the clues available to the police were inconclusive, although clearly implicating appellant. In the case sub judice the police had reason to believe that the appellant was responsible for one, possibly two capital murders. Two police officers had been shot, one killed instantly and one whose survival was doubtful. Carrisalez had identified appellant and the officers were confirming his identification with Hernandez. There is no indication that the police did or said anything suggestive in the actual showing of the picture to Hernandez. While the procedure used in this case is not to be encouraged, under the

circumstances we do not find them to be unduly suggestive.

■ Assuming arguendo, that the procedure used in showing Hernandez a single photograph was in fact impermissibly suggestive, we find that the evidence clearly shows that Hernandez' in-court identification is of independent origin and is not based upon impermissible pre-trial procedures. We find that Hernandez' special training in the army permitted him to make a very accurate identification of appellant. The lighting was very good; there is no indication from the record that Hernandez' description of appellant was anything but accurate. There were no distractions and Hernandez, who had been riding with police officers for several years, could be expected to observe the suspect with more precision than would a layperson.

Appellant's contention that these pre-trial procedures were unduly suggestive is without merit. While the better practice may be to get as many individuals as possible who fit the defendant's description, it is not essential that all the individuals be identical; "neither due process nor common sense" requires such exactitude. *Dickson v. State*, 492 S.W.2d 267 (Tex.Cr.App.1973). Grounds of error numbers one through three are overruled.

In ground of error number four appellant alleges that the trial court committed reversible error in admitting over appellant's objection testimony that Carrisalez identified appellant through an allegedly suggestive procedure. The same single photograph objected to above is at issue here.

■ Carrisalez had been severely wounded. He was not expected to survive, (as in fact, he didn't.) We find the facts in *Stovall*, supra, to be controlling. As in *Stovall*, supra, the victim here was hospitalized in critical condition. Likewise, the perpetrator of a very serious offense had not yet been arrested. There is no indication in the record that the police exerted any pressure on Carrisalez nor recommended to him that the suspect in the picture was in custody. On the contrary, a nurse who witnessed the identification testified that Carrisalez became extremely agitated and excited immediately upon seeing appellant's photograph. The nurse also indicated that after the identification was made, Carrisalez remained agitated and had to be repeatedly sedated. Under these circumstances we find that the pre-trial identification procedure utilized in this case was not unduly suggestive and the identification was based upon independent recollection by Carrisalez. See also *Garza v. State* 633 S.W.2d 508 (Tex.Cr.App.1982); *Demouchette v. State* 591 S.W.2d 488 (Tex. Cr.App.1979). Ground of error number four is overruled.

Appellant next alleges that the State failed to lay the proper predicate for admission of a "dying declaration" insofar as there was insufficient proof that Carrisalez was conscious of impending death and held no hope for recovery. He further alleges that the police officers were impermissibly suggestive in their manner of exhibiting appellant's photograph. We disagree.

■ The statement by Carrisalez is per se hearsay and inadmissible unless it fits an exception to the hearsay rule. The predicate to admission of a so-called dying declaration is that the speaker be conscious of approaching death and have no hope for recovery; that the declaration was voluntarily made and not the product of persuasion; and the declaration must not be made in answer to interrogatories calculated to lead the deceased to make any particular statement. Art. 38.20, V.A.C.C.P. *Martinez v. State*, 533 S.W.2d 20 (Tex.Cr.App. 1976).

Appellant claims that the State failed to show that the identification was made when Carrisalez was conscious of impending death and held no hope for recovery and that the statement was made in response to leading questions designed to elicit a certain response.

The testimony at trial established that Carrisalez was critically shot. The treating physician described the wound as a "sucking chest wound"; the bullet entered the

lower part of deceased's left chest, traversed through the upper part of the stomach, the left part of the liver, the gall bladder, the right part of the liver and then exited in the flank of the right side. The doctor further testified that it was a large wound that left lots of blood in the abdomen and shattered the right lobe of the liver and divided the left lobe in two. The doctor testified that Carrisalez was unable to talk as he was on a respirator, however he did know that he was in "serious condition". The paramedics further testified that from the time they arrived at the scene of the shooting through the arrival at the hospital Carrisalez several times stated that he believed he was going to die and that he was "not going to make it".

This Court has long held that the declarant's state of mind may be inferred from circumstances surrounding the statement, such as the nature of the injury and the doctor's testimony. *Fambro v. State,* 139 Tex.Cr.R. 480, 141 S.W.2d 354 (Tex.Cr. App.1940). Moreover it is not necessary that the declarant state in specific terms that he is conscious of impending death. *Moore v. State,* 127 Tex.Cr.R. 637, 78 S.W.2d 189 (Tex.Cr.App.1934); *Whitson v. State,* 495 S.W.2d 944 (Tex.Cr.App.1973). Finally the length of time Carrisalez lived after making the alleged dying declaration is immaterial. *Whitson,* supra. We find the evidence sufficient to show that Carrisalez was conscious of impending death and held no hope for recovery.

The testimony also does not support the contention that Carrisalez identified appellant as a result of questions designed to elicit a certain response. As previously detailed in our rendition of the facts, supra, Carrisalez, upon first viewing appellant's photograph, became very agitated and subsequently had to be sedated. The procedure used was not suggestive given the circumstances. See *Simmons,* supra. The question asked by the officer, "Is this the man who shot you?", is not a leading question. The fact that the statement was the result of a question asked does not invalidate the response. *Lewis v.*

*State,* 128 S.W.2d 798 (Tex.Cr.App.1939); see also R. Ray, Law of Evidence, Vol. 1A, sec. 977 (Texas Practice 3rd ed. 1980). We find that the trial court did not err in admitting Carrisalez' dying declaration and overrule ground of error number five.

Assuming arguendo, that the trial court erred in admitting both the identification of appellant and dying declaration by Carrisalez, we find all the other evidence of appellant's identification as the perpetrator of this offense to be overwhelming. Error, if any, was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

In ground of error number six appellant alleges that the trial court erred in admitting, during the sentencing hearing, statements made by appellant when he was hospitalized. He claims the statements were the result of an interrogation in violation of *Miranda,* supra. We find appellant's argument to be tenuous at best; we cannot agree that the statement made by appellant was the result of an interrogation.

The testimony at trial established that after appellant was arrested he was interrogated by police officers in Edinburg. After telling police officers to look for a certain letter, he then invoked his right to counsel and as such *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

In *Edwards,* supra, the Supreme Court held that, once a criminally accused person invokes his right to counsel, said right must be scrupulously honored. Subsequent to appellant's invocation of his right to counsel, assistant district attorney Hendley attempted to interrogate appellant. Hendley, upon entering the interrogation room where appellant was situated, asked appellant why he had shot Officer Rucker. In response to Hendley appellant immediately decked him and continued to beat him until restrained by several police officers. The following morning while hospitalized, appellant in the presence of two officers, made several threats to the effect that he

would kill all the police when released. These statements were admitted against appellant during the sentencing hearing on the issue of future dangerousness.

Appellant alleges that since Hendley's interrogation of appellant was in violation of his rights under *Miranda,* supra, and *Edwards,* supra, that he would not, but for this illicit interrogation, have been hospitalized, and therefore have made these admittedly damaging statements. Appellant's argument fails for several reasons. First, we cannot agree that, but for Hendley's interrogation, appellant would not have been hospitalized. Rather we believe that, but for appellant's violent reaction to Hendley's interrogation he would not have been hospitalized. An illicit interrogation does not authorize the appellant to assault the interrogator. Article 37.071 permits the trial judge great discretion in the punishment phase of a capital trial. Clearly this testimony was relevant as to appellant's future dangerousness. Ground of error number six is overruled.

In ground of error number seven appellant objects to the admission of a news journalist's testimony that appellant assaulted him. Appellant claims that the assault occurred while appellant was being transferred for arraignment on an unrelated charge for which he was subsequently acquitted. He claims that the testimony permitted the jury to speculate as to what appellant was in custody for and was therefore prejudicial. The trial judge, mindful of possible prejudice, refused to permit the showing of a videotape of the attack; he did permit the testimony, but limited such testimony to the actual attack and prohibited discussion as to the charge for which appellant was in custody at the time of the assault. Article 37.071 permits the trial judge great discretion in the punishment phase of a capital trial. Clearly this testimony was relevant as to appellant's future dangerousness. We have repeatedly held that proof of unadjudicated extraneous offenses at the sentencing hearing of a capital case is admissible. *Rumbaugh v. State,* 629 S.W.2d 747 (Tex.Cr.App.1982);

*Williams v. State,* 622 S.W.2d 116 (Tex.Cr. App.1981). What is important in a capital sentencing hearing is that the jury have all the relevant evidence available upon which to make this most important judgment. *Garcia v. State,* 581 S.W.2d 168 (Tex.Cr. App.1979), see also *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Ground of error number seven is overruled.

Finally, appellant challenges the admission of testimony regarding an illicit sawed-off shotgun found in the trunk of the vehicle appellant used during the commission of the offense. Appellant claims that this is testimony of an extraneous offense and the State has failed to prove he committed the offense and therefore the testimony is inadmissible. See *Phillips v. State,* 659 S.W.2d 415 (Tex.Cr.App.1983).

Appellant claims that since he did not own the vehicle, the State had failed to show that he had knowledge that the prohibited weapon was in the vehicle. While we agree that the testimony proved that appellant was not the registered owner of the vehicle, we find that the evidence clearly showed that appellant was the only driver of the vehicle. When police located the vehicle in question, they asked appellant's girlfriend if she owned the vehicle. The police officer testified, without objection, that she said that the vehicle was registered in her name, but that *she did not own a set of keys* for the car. She further stated that the appellant drove the car and that she had not seen the car since early the previous morning when appellant drove her daughters to school and took the car. In the car were found several personal belongings of the appellant. Finally, when appellant was arrested, the keys to the vehicle were found in his pants. We find that this testimony more than adequately connects appellant to the extraneous offense.

Assuming arguendo, that the complained of testimony was in fact inadmissible, we find that the error was harmless beyond a reasonable doubt. *Chapman v.*

*California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Given the facts of the instant offense, the capital murders of two police officers for no apparent reason, we cannot say that testimony regarding a sawed-off shotgun could have at all contributed to the jury's returning an affirmative answer to special issue number two. Ground of error number eight is overruled.

The judgment of the trial court is affirmed.

CLINTON, J., dissents,

TEAGUE, J., dissents on No. 5, 6, and 7.