**Billy Ray FORD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–90–00090–CR.**

Court of Appeals of Texas,
El Paso.

July 18, 1990.

William D. Burdett, Hearn and William W. Vance, Vance, Bruchez & Goss, P.C., Bryan, for appellant.

Bill R. Turner, Dist. Atty. and Margaret Lalk, Asst. Dist. Atty., Bryan, for appellee.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This is an appeal from a conviction for aggravated robbery. The jury assessed punishment, enhanced by one prior felony conviction for burglary of a habitation, at imprisonment for thirty years and a fine of $24.00. We affirm.

The first point of error contends that the lower court erred in failing to suppress the in-court identification of Appellant by the complainant as the product of suggestive pretrial identification procedures, namely a six-subject photographic array in which the complainant Tracy Forsyth identified Appellant (Subject no. 2) as the individual who robbed her at gunpoint.

At approximately 11:20 p.m., April 30, 1987, Tracy Forsyth was the sole clerk on duty at a 7–11 convenience store in College Station. A black male, identified by Forsyth as Appellant, passed in front of the store in the direction of the pay telephone. He then entered and asked for change, apparently waiting for the telephone to become available. At a distance of two feet, face-to-face in the well lighted store, Appellant engaged Forsyth in several minutes of conversation. He then exited. Several minutes later, he entered, followed by another black male (Bernard Smith; identified as subject no. 5 in the photographic array). Smith walked to the cold drink vault at the rear. Appellant approached Forsyth at the register. He briefly exhibited a revolver and demanded all the money from the register. This amounted to approximately $24.00. Appellant raised the drawer to check for additional money in the register. He then demanded and received four packs of Kool 100 cigarettes. Smith exited the door, followed less than a minute later by Appellant. While Forsyth suspected Smith of stealing several cases of beer, she could not be certain, her attention centering upon the Appellant. In fact, she could only assume that the two were acting in concert. She did not see them arrive or depart in the same vehicle. They did not speak to each other, and Smith never approached the register or said anything to Forsyth. Forsyth locked the store and summoned the police. During her next work shift, a day later, a white van with three subjects stopped in front of the store. After several minutes, Smith entered and purchased three beers, staring at Forsyth and smiling. She recognized him as the second subject from the night before. As he was leaving, Forsyth noted the license number of the van and reported it to the police. The police traced the vehicle to Bernard Smith's brother, George.

Talking to George's wife, police learned that Bernard Smith and Appellant had departed from George's house in the van on the night of April 30 (George's birthday). Preexisting police photographs of Appellant and Smith were thus utilized in the photographic array presented to Forsyth. She unequivocally identified their photographs.

In a not atypical anecdotal episode occasionally encountered in trial proceedings, Appellant was displeased with his handling at the pretrial suppression hearing. It seems that he was brought to the courtroom along a hallway where he could be seen by the various witnesses. In making a preliminary complaint to the trial judge, Appellant took the stand:

Q: This morning when you were brought in you came in through the hallway leading into the courtroom?

A: Yes, sir.

Q: And did you see any of the witnesses in this case?

A: Yes, sir.

Q: Which witnesses did you see?

A: The ones that I robbed.

Q: All right. And what's her name?

A: Tracy Forsyth.

866

The jury was not made privy to this statement, and we have not relied upon it in disposing of the points of error.

■ The defendant bears the burden of demonstrating by clear and convincing evidence that the trial identification was irreparably tainted by an impermissibly suggestive pretrial identification procedure. *Herrera v. State*, 682 S.W.2d 313, 318 (Tex.Crim.App.1984). Such an irreparable taint would amount to a denial of due process, *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Evaluation of the complaint involves a two-step process—first, determining whether the pretrial procedure was impermissibly suggestive and second, whether there was a resulting substantial likelihood of misidentification. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). It is this latter danger which is critical and directly implicates the defendant's due process rights. Consequently, if unnecessarily suggestive procedures were utilized in advance of trial, a subsequent in-court identification may, nonetheless, be permitted if the State demonstrates by clear and convincing evidence at the trial level that the pretrial procedure did not taint the in-court identification and that the testimony was the product of an independent source, namely the observations made at the time of the offense. *Jackson v. State*, 657 S.W.2d 123, 130 (Tex.Crim.App. 1983); *Williams v. State*, 477 S.W.2d 885 (Tex.Crim.App.1972). If an independent origin is adequately shown, it may be concluded that the impermissible pretrial procedure did not result in a substantial likelihood of misidentification. *Id.; Herrera*, 682 S.W.2d at 318.

■ In assessing the existence of resulting taint or independent origin, the courts have identified a variety of factors to be assessed on a case-by-case basis: (1) the witness's prior opportunity to observe the perpetrator, (2) any discrepancy between the witness's earlier description of the perpetrator and the defendant's actual appearance, (3) whether the witness has previously identified some other individual, (4) prior identification of the accused by the witness, (5) prior failures of the witness to identify the accused, (6) the lapse of time between the offense and the various identifications. *Herrera*, 682 S.W.2d at 318.

■ Appellant's complaint in this case is without merit at every step of the foregoing analytical framework. A copy of State's Exhibit No. One (the photographic array) is contained in the record and although the reproduction is of poor quality, it is nonetheless adequate to disprove Appellant's objections. At the outset, there is an obvious disparity between the three photographs on the top row (Appellant's position is no. 2) and the three photographs on the bottom row (Bernard Smith is in position no. 5). This distinction is adequately explained by the testimony of the identification officer, Detective Walker. In effect, he assembled two three-photograph arrays, not one six-photograph array. The top row was composed of photographs of individuals resembling the armed robber (allegedly Appellant's role) and the bottom row consisted of individuals resembling the second subject at the robbery scene (allegedly Bernard Smith). Viewing each row separately, we conclude that Appellant has not demonstrated an impermissibly suggestive array. Subjects in either a photographic array or a physical lineup need not be identical. Their similarities in appearance should be adequate to provide a reasonable test for the witness's capacity to reliably identify the perpetrator. The photographs of Appellant and his array companions on the top row reflect great similarity in size and shape of facial features—nose, lips, facial hair, shape of face. Appellant complains of the length of hair shown in his photograph, but we find the difference to be less than suggestive. He further complains of the age disparity between the subjects reflected in the worksheet prepared by Detective Walker. The actual age difference is certainly not reflected in their comparative facial appearance. None of the subjects stand out from the group by their appearance of comparative age or youth.

■ Beyond the acceptable photographic array(s), the independent origin of Forsyth's in-court identification was clearly es-

tablished. She initially conversed with the Appellant for several minutes, face-to-face at a distance of two feet, in a well lighted store, in a nontraumatic setting. When he re-entered to commit the robbery, they were again face-to-face. Appellant wore no mask. Even the weapon posed no continuing distraction, since Appellant concealed it after an initial exhibition. Forsyth was even less exposed to Bernard Smith but was able to identify him the next day, providing a lead through which the police discovered the use of the van by Smith and Appellant on the night of April 30. Smith's own testimony for the defense placed both Appellant and himself in the convenience store that night. One month later, Forsyth readily identified Smith and Appellant in the photographic array. She consistently identified him at a parole revocation hearing, a pretrial hearing in this case and at trial. She never failed to identify him and never inconsistently identified another. Her description of the perpetrator matched the Appellant's appearance.

In fact, any lingering doubt as to identity had to have been removed when the defense called Bernard Smith. Apart from a discrepancy in time of arrival, Smith confirmed that he and Appellant did indeed enter the convenience store that night, in a sequence comporting with that described by Forsyth. Separately inside the store, he went not to the cold drinks vault but to the bathroom. He exited before Appellant and watched from the van. He could see Appellant at the counter with the clerk (i.e. Forsyth). He saw nothing suggesting a robbery taking place, although his testimony is sufficiently vague to allow him to claim lack of knowledge, if in fact Appellant was at that moment robbing Forsyth. Smith's testimony leaves intact a factual dispute as to what occurred between Forsyth and Appellant after Smith separated from him. It does remove, however, the issue of misidentification to the extent of determining the admissibility of Forsyth's in-court identification. In any event, the time dispute was a matter for factual resolution by the jury in their assessment of the weight and credibility of the evidence. Point of Error No. One is overruled.

■ Point of Error No. Two challenges the sufficiency of the evidence to support conviction. Again, Appellant asserts his misidentification argument. For the reasons stated above, Forsyth's in-court identification was admissible and sufficient for the jury to conclude that Appellant was the perpetrator. Appellant also points to the fact that Forsyth was subsequently fired by her employer for consuming food items on the premises without paying for them at the time. This impeaching evidence was presented before the jury for their consideration in assessing Forsyth's credibility. It certainly did not render her testimony untrue as a matter of law. This court does not sit as a thirteenth juror, but simply assesses the reasonableness of the jury's conclusion in relation to the evidence before them. This was a direct evidence case. The evidence, viewed in a light most favorable to the verdict, provided a sufficient basis for any rational trier of fact to find each and every element of the offense beyond a reasonable doubt. Point of Error No. Two is overruled.

Prior to the transfer of this cause from the First Court of Appeals to this Court, Appellant filed a motion to dismiss court-appointed appellate counsel and proceed pro se. The First Court of Appeals ordered the trial court to conduct a hearing and make findings with regard to the factors enunciated in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) and *Funderburg v. State,* 717 S.W.2d 637 (Tex.Crim.App.1986). A record of that hearing with finding by the trial judge was filed in May 1988, over one year before the appellate case transfer. The record forwarded presents no ruling on Appellant's motion. An examination of the record of the hearing and the trial judge's finding discloses that Appellant's primary desire was not to proceed pro se but to proceed with appellate counsel who would include points of error dictated by Appellant, namely ineffective assistance of trial counsel. At the hearing, appellate counsel stated that Appellant had never before communicated any such complaint and appellate counsel's review of the record disclosed no ineffective assistance on the part of the trial attorney. Appellate counsel

proceeded to file a brief on the merits, not a frivolous appeal brief. Appellant filed a pro se brief raising two points of error—a challenge to the probable cause statement in the affidavit for the arrest warrant and ineffective assistance of counsel by both his trial and appellate attorneys.

An Appellant cannot dictate the points of error presented by counsel on appeal. He has a right to file a pro se brief in addition to counsel's brief only when counsel has presented a frivolous appeal brief. *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). That is not the case here. Otherwise, there is no right to hybrid representation. Appellant's pro se motion should have been overruled and his brief rejected for filing. Nonetheless, we have reviewed the complaints presented in the pro se brief and find them to be without merit. The record contains no statement of facts from the purported hearing challenging the affidavit for the arrest warrant. Even considering the informal attachments to the pro se brief, however, the affidavit clearly presents probable cause. Appellant correctly points out that the allegations in the affidavit differ in some respects from the account given by Forsyth and recorded in her statements to the police and her employer. Those errors do not reflect intentional or knowing misstatements by the affiant, nor misstatements made in reckless disregard of the truth, of facts which created probable cause not otherwise presented by the affidavit. Furthermore, the affidavit and resulting arrest warrant, even if defective, led to Appellant's seizure but not to any consequent seizure of incriminating evidence. Hence, there was no harm. The ineffective assistance complaints are equally without merit. Further discussion of the pro se points of error is unwarranted and would contribute nothing to the just disposition of this cause or the jurisprudence of the state. Pro se Points of Error Nos. One and Two are overruled.

The judgment is hereby affirmed.