Hill v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-257-CR

     WILLIAM FAYE HILL,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court # 19,080-CR
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant attacks his October 5, 1992, conviction for burglary of the residence of Pam
Ledbetter in Italy, Texas, for which a jury sentenced him to thirty-seven years in prison. He
appeals on three points of error which assert that the trial court erred in overruling his objection
to the introduction of a photo lineup and that the evidence is legally insufficient to support his
conviction. We will affirm the judgment
IDENTIFICATION OF APPELLANT
      Pamela Ledbetter testified that her home at the Italy Mobile Home Park had been burglarized
on April 10, 1992, and that her television, stereo, and a jewelry box containing various pieces of
jewelry had been taken. She further stated that no one had her permission to enter the trailer and
remove items. 
      Luther Buchanan, chief of the Italy police department, testified that on April 10 a burglary
had occurred at the Ledbetter home. Through Chief Buchanan the State introduced the
photographs of the mobile home park and of Ledbetter's trailer. He identified twelve-year-old
Monica Lambert as an eyewitness to the burglary. He stated that he had shown her two photo
lineups the day following the burglary, April 11, and identified State's exhibit five as being one
of them. Appellant objected to the photo lineup as State's exhibit five and to any testimony
concerning the lineup on the grounds that the proper foundation had not been laid. Specifically,
he objected that exhibit five did not include all of the photos that had been shown to Monica
Lambert the day after the burglary. Appellant now argues on appeal that Lambert identified him
in the courtroom based upon a lineup that was not adequately represented in court by State's
exhibit five.
      Lambert testified that the burglary had taken place at about six p.m. on August 10 during
daylight/dusk and that three men had been involved. Only one trailer, belonging to the
grandmother of co-defendant Bobby Duke, separated the Lambert and Ledbetter trailers. 
Lambert, who had seen Appellant earlier in the day, had a good opportunity to observe Appellant
both before and during the burglary. She identified Appellant as one of the two men who had
actually entered Ledbetter's trailer. She stated that she watched them as she stood in front of her
trailer and that it was not yet dark. She testified that she had a clear view of the front door of the
Ledbetter trailer and that she had seen Appellant and a "crippled man," the driver of the pickup
in which the men had arrived, talking with some ladies at Ms. Duke's trailer before the burglary
occurred. 
      Lambert identified Appellant in the first of two photo lineups shown to her the day after the
burglary and again in the second photo lineup introduced as State's exhibit five during trial. She
identified the photo lineup introduced at trial as one of the two lineups she had viewed the day
after the burglary. She had already unequivocally identified Appellant in the courtroom, without
objection, as one of the men she had seen entering the trailer and who had emerged carrying a
television or a "little brown box" that he had placed in the back of the pickup.
      The jury was aware through both Chief Buchanan's and Lambert's testimony that the photo
lineup introduced in court was not the only lineup originally shown to her. However, Lambert
had already successfully identified Appellant from the photo lineup the day following the burglary
and neither error nor harm has been shown by the admission of the single photo lineup. Nothing
in the record indicates that the photo array in the exhibit was suggestive or that either Lambert's
pre-trial or in-court identification of Appellant was unreliable. See Herrera v. State, 682 S.W.2d
313, 318 (Tex. Crim. App. 1984); Ford v. State, 794 S.W.2d 863, 866 (Tex. App.—El Paso
1990, pet ref'd).
      Appellant also complains under point one that the photo lineup was suggestive because he was
the only one pictured who had blonde or red hair. However, he did not move to exclude the photo
lineup on this basis, nor did he object in any manner to Lambert's in-court identification of him,
such as that it had resulted from an improper pretrial identification procedure. See Ford, 794
S.W.2d at 866; Holloway v. State, 691 S.W.2d 608, 615 (Tex. Crim. App. 1984). Thus,
Appellant has waived this complaint. See Perry v. State, 703 S.W.2d 668, 673-74 (Tex. Crim.
App. 1986). Point one is overruled.
LEGAL SUFFICIENCY OF THE EVIDENCE
      Appellant's second and third points assert that the evidence is legally insufficient to support
his conviction. Evidence will sustain a conviction if, viewing it in the light most favorable to the
verdict, any rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61
L.Ed.2d 560 (1979); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991).
      In addition to Monica Lambert's testimony that Appellant entered Ledbetter's residence and
removed items and the testimony of the victim herself, Bobby Duke testified that Mike Parker
kicked in the door of Ledbetter's trailer and that Parker and Appellant then entered the trailer and
loaded items into the back of the pickup. Duke further stated that he had helped Appellant pawn
the stolen items in Dallas. Although Duke's testimony as an accomplice would not have been
enough to support Appellant's conviction, Lambert's testimony corroborates Duke's testimony
and, together, constitute legally sufficient evidence to support Appellant's conviction. See
Matson, 819 S.W.2d at 843.
      Although Appellant contends that the testimony of Lambert and of Duke was contradictory,
the credibility of the witnesses was for the jury to resolve, and they were free to accept or reject
all or part of a witness's testimony. See Johnson v. State, 571 S.W.2d 170, 173 (Tex. Crim. App.
1979); Lafoon v. State, 543 S.W.2d 617, 620 (Tex. Crim. App. 1976). 
      Appellant further claims in point two that the identification evidence contained in State's
exhibit five was the only evidence affirmatively linking him to the crime, aside from the
"confusing" testimony of the eyewitness and the testimony of the co-defendant. However, as we
have already held, State's exhibit five and the testimony related to it were admissible and, in any
event, the evidence it contained was cumulative of Lambert's in-court identification of Appellant
which was made without objection. Point two is overruled.
      The judgment is affirmed.

                                                                                     PER CURIAM

Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Affirmed
Opinion delivered and filed April 14, 1993
Do not publish



Almanza,
686 S.W.2d at 171. The "degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative evidence, the
argument of counsel and any other relevant information revealed by the record of the trial as a
whole." Almanza, 686 S.W.2d at 171.
          We find no egregious harm to Whitson as a result of the way the jury was charged. The
prosecution's theory of the case is obvious when viewed in light of the entire jury charge. Five
application paragraphs in the charge state that the jury should find Whitson guilty of sexual
assault, as charged in corresponding counts one through five of the indictment, only if they find
that he "did intentionally or knowingly cause the sexual organ of [victim] . . . to penetrate the
mouth of said Defendant." (Emphasis added). In fact, these application paragraphs mirrored the
language used in the indictment and were consistent with the evidence and arguments presented
at trial. 
          The erroneous portion of the charge defined sexual assault as "caus[ing] the penetration
of the mouth of a child by any means." (Emphasis added). The prosecution never alleged or
argued that this event took place. We find no evidence of such an event in the record. Thus, the
jury obviously disregarded the definition in making its decision. As a result, Whitson cannot show
that he suffered egregious harm from the error. Even if the jury chose to follow the definition,
Whitson would have only benefitted by their choice because the absence of evidence to support
the definition could have only mislead the jury in his favor. We overrule the first complaint in
point one. 
          We next consider Whitson's other argument in point one, that as a result of the definition
of sexual assault in the charge the evidence was legally insufficient to support a finding of guilt. 
This argument necessarily assumes that the sufficiency of the evidence in this case is judged in
some way by the contents of the definition. To the contrary, sufficiency of the evidence is
measured by the contents of the application paragraph in the charge, not by abstract definitions. 
Biggins v. State, 824 S.W.2d 179, 180 (Tex. Crim. App. 1992); Walker v. State, 823 S.W.2d
247, 248 (Tex. Crim. App. 1991); Jones v. State, 815 S.W.2d 667, 670 (Tex. Crim. App. 1991)
("a charge which fails to apply a theory of law to the facts of the case is insufficient to authorize
conviction on that theory, even where the theory of law is abstractly defined in the charge.").
          In Biggins, Walker, and Jones, the application paragraphs were lacking a theory of law
necessary to authorize conviction in light of the evidence presented.


 Id. In this case, the
application paragraphs correctly state and apply the law under which Whitson was prosecuted: 
Whitson "did intentionally or knowingly cause the sexual organ of [victim] . . . to penetrate
[Whitson's] mouth." The prosecution presented evidence that Whitson performed oral sex on the
victim on at least five different occasions. We find this evidence is legally sufficient to support
a finding of guilt when measured against the application paragraphs in the court's charge. Thus,
we also reject Whitson's second argument in point one. Point one is overruled.
          In point three, Whitson argues that the court improperly admitted evidence of
unadjudicated extraneous offenses during the punishment phase of the trial. The record indicates
that, during the punishment phase, the State offered testimony from four witnesses. Each testified
about different unadjudicated extraneous offenses and acts of misconduct involving Whitson. 
          The offense date in the first count of the indictment was on or about August 15, 1993. In
trials for noncapital offenses that occurred prior to September 1, 1993, evidence of unadjudicated
extraneous offenses is not admissible during the punishment phase. Grunsfeld v. State, 843
S.W.2d 521, 526 (Tex. Crim. App. 1992). Effective September 1, 1993, the Texas Legislature
amended article 37.07, section 3(a) of the Code of Criminal Procedure to allow admission of
unadjudicated extraneous offenses at the punishment phase of a noncapital case.


 Tex. Code
Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp. 1995); Voisine v. State, 889 S.W.2d 371, 372
(Tex. App.—Houston [14th Dist.] 1994, no pet.) (amendment to article 37.07 applies only to trials
for offenses committed on or after September 1, 1993). Thus, unadjudicated extraneous offense
testimony during the punishment phase of Whitson's trial was inadmissible as to count one because
it occurred prior to September 1, 1993 and admissible as to counts two through seven because they
occurred after September 1, 1993.
          We first consider whether the complaint raised in point three has been preserved for our
review. To preserve a complaint for appellate review, the complaining party must make a timely,
specific objection and obtain a ruling on that objection. Broxton v. State, No. 71,488, slip op.
at 9 (Tex. Crim. App. October 4, 1995). In addition, the point of error on appeal must
correspond to the objection made at trial. Id. However, the Court of Criminal Appeals has also
concluded that "there are no technical considerations or form of words" required; thus, an
objection is sufficient if the party "let[s] the trial judge know what he wants, why he thinks himself
entitled to it, and [does] so clearly enough for the judge to understand him at a time when the trial
court is in the proper position to do something about it." Lankston v. State, 827 S.W.2d 907, 909
(Tex. Crim. App. 1992).
          Whitson objected to the testimony of each of the four witnesses pursuant to Rules of
Criminal Evidence 401 and 403, the notice provision of Rule of Criminal Evidence 404(b), and
a previously filed motion to exclude evidence for lack of notice. Tex. R. Crim. Evid. 401, 403,
404(b). He objected to the testimony of three of the witnesses under Rule of Criminal Evidence
402 and the notice provision of article 37.07 of the Code of Criminal Procedure. Id. 402; Tex.
Code Crim. Proc. Ann. art. 37.07, § 3(g). He also objected to the testimony of two of the
witnesses based on the character-conformity provision of Rule of Criminal Evidence 404(b). Tex.
R. Crim. Evid. 404(b). 
          The question is whether any of the objections above are sufficient to preserve a complaint
about the improper admission of unadjudicated extraneous offenses in the punishment phase of a
trial where the offense date was August 15, 1993. The State argues that, because Whitson failed
to specifically object under Grunsfeld or article 37.07, section 3(a) of the Code of Criminal
Procedure, he has waived point three. See 843 S.W.2d at 526; Tex. Code Crim. Proc. Ann.
art. 37.07, § 3(a). Whitson argues, however, that he was not required to use any "magic words,"
and that his objections pursuant to Rules 401 and 403 were sufficient to preserve his complaint. 
Tex. R. Crim. Evid. 401, 403.
          Rule 401 defines "relevant evidence" as "evidence having any tendency to make the
existence of any fact that is of consequence to the determination of the action more probable or
less probable than it would be without the evidence." Id. 401. Rule 403 provides the general
authority to exclude relevant evidence on the basis of unfair prejudice, confusion of issues,
misleading the jury, undue delay, and cumulativeness. Id. 403. Whitson argues that the essence
of a "Grunsfeld issue" is relevance, i.e., whether unadjudicated extraneous offenses are facts that
are of consequence to the determination of punishment. Grunsfeld, 843 S.W.2d 521. We agree
and conclude that Whitson's objections pursuant to Rules 401 and 403 were sufficient to call the
matter to the attention of the court.



          However, as we stated earlier, because the offenses in counts two through seven occurred
after the Texas Legislature amended article 37.07, section 3(a) of the Code of Criminal Procedure
to allow admission of unadjudicated extraneous offenses, the State was entitled to introduce
evidence of Whitson's extraneous offenses at the punishment phase of trial for the limited purpose
of assessing punishment for counts two through seven. Tex. Code Crim. Proc. Ann. art. 37.07,
§ 3(a); Voisine, 889 S.W.2d at 372. Whitson did object to the unadjudicated extraneous-offense
testimony; however, because he failed to ask the court for a limiting instruction, the court admitted
the evidence without limitation. "Where evidence is admissible for a limited purpose and the court
admits it without limitation, the party opposing the evidence has the burden of requesting a
limiting instruction." Abdnor v. State, 808 S.W.2d 476, 478 (Tex. Crim. App. 1991). Rule of
Criminal Evidence 105(a) requires:
(a)When evidence which is admissible as to one party or for one purpose but
not admissible as to another party or for another purpose is admitted, the court,
upon request, shall restrict the evidence to its proper scope and instruct the jury
accordingly; but, in the absence of such request the court's action in admitting such
evidence without limitation shall not be a ground for complaint on appeal. 
Tex. R. Crim. Evid. 105(a) (emphasis added). Because Whitson failed to request a limiting
instruction as to the unadjudicated extraneous-offense testimony, his complaint is not preserved
for our review. Point three is overruled.
          In point two, Whitson argues that the court abused its discretion by denying him a pretrial
hearing to determine the admissibility of extraneous offenses the State intended to introduce in its
case in chief. He claims that this unfairly restricted his voir dire, denying him the opportunity to
question potential jurors about what impact extraneous offenses might have on their verdicts. As
a result, Whitson claims he was denied the effective assistance of counsel.
          Prior to trial, and in response to Whitson's timely request, the State gave notice of its intent
to introduce extraneous offenses in its case in chief. See Tex. R. Crim. Evid. 404(b). Whitson
requested a pretrial determination of the admissibility of these extraneous offenses, while the State
suggested that the court take up such matters during trial, outside the presence of the jury. The
court denied Whitson's motion, placing him on the horns of a dilemma: either ignore the
extraneous matters during voir dire, even though they might later be ruled admissible, or inquire
about the panel's ability to follow the court's instructions on the extraneous matters, even though
they might later be ruled inadmissible. In other words, Whitson was placed in the precarious
position of having to guess whether he should suggest the existence of extraneous offenses which
might not be admitted into evidence in the presence of the jury.
          Whitson vigorously argues the importance of voir dire and emphasizes that a "broad scope
of voir dire" is necessary to ensure the effective assistance of counsel and the right to a fair trial
and an impartial jury. See McCarter v. State, 837 S.W.2d 117, 120 (Tex. Crim. App. 1992); Ex
parte McKay, 819 S.W.2d 478, 482 (Tex. Crim. App. 1990). He argues that the court's denial
of the pretrial hearing restricted his ability to properly question the jury panel. We agree that voir
dire is important; however, we do not believe the court's failure to hold a pretrial hearing had the
direct effect of restricting Whitson's voir dire. The court's ruling did not amount to a denial of
Whitson's right to question potential jurors regarding the impact of extraneous offenses on their
verdicts. Despite the ruling, Whitson was still entitled to voir dire prospective jurors on any
matter of his choosing; no line of questioning was ever disallowed.
          We review the court's decision to deny Whitson a pretrial hearing under an abuse of
discretion standard, meaning the decision will not be disturbed so long as it was within the realm
of reasonableness given the facts presented to the court. See Narvaiz v. State, 840 S.W.2d 415,
428 (Tex. Crim. App. 1992). In other words, if the circumstances indicate that the court's
decision was "so clearly wrong as to lie outside that zone within which reasonable persons might
disagree," we will find an abuse of discretion. Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim.
App. 1992). 
          Article 28.01, which allows the trial court to set any criminal case for a pretrial hearing,
is not a mandatory statute, but one directed to the trial court's discretion. Tex. Code Crim.
Proc. Ann. art. 28.01 (Vernon 1989); Calloway v. State, 743 S.W.2d 645, 649 (Tex. Crim. App.
1988). The question of whether to hold a pretrial hearing to determine the admissibility of
evidence rests within the discretion of the trial court. See id.; State v. Reed, 888 S.W.2d 117, 119
(Tex. App.—San Antonio 1994, no pet.). "Even if the defendant specifically requests a pretrial
hearing, no error is presented if the court declines to hear the matter." Reed, 888 S.W.2d at 119
(citing Calloway, 743 S.W.2d at 649). 
          Additionally, a review of the record reveals that the court's ruling on Whitson's motion
for a pretrial hearing was not an arbitrary or capricious one. About twenty minutes before the
venire was to be assembled, the court entertained argument from both sides on Whitson's motion
for a pretrial hearing and appeared ready to delay the trial, stating, "I'm getting ready to put this
thing off. I've got 20 minutes before the jury comes in." After a recess, the court denied
Whitson's motion for a pretrial hearing, and agreed to decide the admissibility of the extraneous
offenses later during the trial. In fact, immediately after the court denied Whitson's motion for
a pretrial hearing, it granted the following portion of his Motion in Limine:
1.Questioning any witness . . . if he elects to testify about any:
 
. . .
 
d.Prior alleged assaults or sexual assaults by the Defendant against
any individual.
e.Prior "bad acts" allegedly committed by the Defendant.
f.Prior conduct allegedly committed by Defendant against the alleged
victim or any other person.
g.Fights, altercations, arguments and verbal and/or physical disputes
between the defendant and the victim except for the incident the
subject of this prosecution.
Thus, we conclude that the court did not abuse its discretion by denying Whitson's motion for a
pretrial hearing on the admissibility of extraneous offenses. We overrule point two.
          In point four, Whitson argues that the court abused its discretion in allowing two of the
State's witnesses, who were not on the State's witness list, to testify during the punishment phase
of the trial. At punishment, the State introduced four witnesses: 1) T.M., a fifteen-year-old male;
2) L.S., a twenty-one-year-old male; 3) K.R., a twenty-year-old male; and 4) the fifteen-year-old
male victim. K.R. and the victim were already on the State's witness list; however, T.M. and
L.S. were not. The record reflects that T.M. came forward for the first time two days before he
testified. Similarly, L.S. came forward for the first time "two or three" days before he testified. 
          Upon request by the defense, notice of the State's witnesses should be given. Stoker v.
State, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 951, 111 S.Ct. 371, 112
L.Ed.2d 333 (1990). When a witness whose name is not on a witness list furnished to the
defendant is permitted to testify, the standard of review is whether the trial court abused its
discretion in allowing such witness to testify. Id. We will consider the following factors in
determining whether there has been an abuse of discretion: the prosecutor's bad faith and the
defendant's ability to reasonably anticipate the testimony of the witnesses. Id. Unless Whitson
can show: 1) bad faith or willfulness on the part of the prosecution in failing to disclose the
witnesses; or 2) that he could not have reasonably anticipated that the prosecutor would call such
witnesses, the court's decision to allow the testimony will not be disturbed. Id.; Mock v. State,
848 S.W.2d 215, 222 (Tex. App.—El Paso 1992, pet. ref'd); Baker v. State, 797 S.W.2d 406,
409 (Tex. App.—Fort Worth 1990, pet. ref'd); see also State v. Wright, 830 S.W.2d 309, 313
(Tex. App.—Tyler 1992, no pet.).
          Whitson does not assert that the State had knowledge of T.M. and L.S. prior to the time
they came forward. He argues, instead, that the State's failure to exercise due diligence in
locating the witnesses prior to trial is tantamount to bad faith. According to Whitson, the sudden
increase in the number of State's witnesses just days before trial indicates that the witnesses were
easy to locate and that the State waited too long before "getting serious" about preparing for trial. 
However, the "bad faith" factor we consider when determining whether there has been an abuse
of discretion is not whether the prosecutor used due diligence to locate a witness, but rather,
whether the prosecutor "fail[ed] to disclose ahead of time the name of the witness." Stoker, 788
S.W.2d at 15 (emphasis added). 
          The record reflects that T.M. and L.S. were discovered at the "last minute" because they
chose to come forward at that time. Further, the record does not show that their stories of abuse
by Whitson were widely known. Thus, there is no indication from the record that the State could
have located them any sooner. Since the State disclosed the names of the witnesses as soon as it
learned of them, we conclude there is no showing of bad faith on its part.
          The second factor to consider in determining whether there was an abuse of discretion is
whether the defendant can reasonably anticipate that the witness would testify despite the absence
of his name on any witness list. Id. However, this factor "is not, by itself, determinative of
whether the trial court abused its discretion." Id. The State asserts that the existence of K.R.'s
and the victim's names on the witness list should have placed Whitson on notice that other of his
victims might come forward. Although the reasonable-anticipation factor is not, by itself,
dispositive of our determination of whether the trial court abused its discretion in allowing T.M.
and L.S. to testify, we agree with the State that notice of some witnesses is better than no notice
at all.
          Furthermore, at trial, the court provided Whitson the opportunity to hear the testimony of
T.M. and L.S. and then cross-examine them outside the presence of the jury. Whitson also had
two days in which to investigate the witnesses and prepare his cross-examination.


 In light of
these facts, we hold that the trial court did not abuse its discretion in allowing T.M. and L.S. to
testify. We overrule point four.  
          In point five, Whitson argues that the court committed reversible error when it allowed the
State to offer unadjudicated extraneous offenses that were not contained in its notice filed pursuant
to article 37.07, § 3(g), of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art.
37.07, § 3(g). In point six, Whitson argues that the trial court abused its discretion and
improperly denied his motions for continuance made during punishment because: "1)
unadjudicated extraneous offense witnesses were called at punishment without timely or adequate
notice; 2) the court denied a pretrial hearing; and 3) appointed counsel did not have ten days to
prepare for the trial on the unadjudicated offenses." Because our discussion of points two and four
addresses Whitson's contentions about how he was harmed by the admission of the extraneous
offenses, and because we have determined that the court did not abuse its discretion in admitting
them, we overrule points five and six.
          The judgment of the trial court is affirmed.
 
                                                                                 BILL VANCE                                                                                                               Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed December 6, 1995
Do not publish