In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00009-CR


______________________________




CHARLES WHITLEY MICK, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 8th Judicial District Court


Hopkins County, Texas


Trial Court No. 0618767




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Charles Whitley Mick appeals from his conviction by a jury for indecency with a child with
J.H. and aggravated sexual assault on a child with J.H. The jury assessed his punishment at twenty
years' and forty years' imprisonment, respectively, and $10,000.00 fines. (1)

 On appeal, Mick contends that the trial court erred by admitting a video recording of an
interview by a state worker with another alleged victim, M.M. (2) He argues that this error is reversible
because it leaves grave doubt that his conviction was free from the substantial influence of the error. 

 We addressed this issue in detail in our opinion of this date on his appeal in cause number
06-07-00004-CR. For the reasons stated therein, we likewise conclude that error has not been
shown.

 We affirm the judgment. 



 Bailey C. Moseley

 Justice


Date Submitted: May 30, 2008

Date Decided: June 2, 2008


Do Not Publish

1. Mick appeals from this and five other convictions. In cause number 06-07-00004-CR, he
was convicted of aggravated sexual assault on M.M. and sentenced to forty years' imprisonment
(concurrent). In cause number 06-07-00005-CR, he was convicted of aggravated sexual assault on
M.M. and sentenced to forty years' imprisonment (concurrent). In cause number 06-07-00006-CR,
he was convicted of indecency with a child with J.H. and sentenced to twenty years' imprisonment
(concurrent). In cause number 06-07-00007-CR, he was convicted of indecency with a child with
J.H. and sentenced to twenty years' imprisonment (concurrent). In cause number 06-07-00008-CR,
he was convicted of one count of indecency with a child with J.H. and sentenced to twenty years'
imprisonment (concurrent), and one count of aggravated sexual assault on a child with J.H. and
sentenced to forty years' imprisonment (consecutive to 0618762 (06-07-00004-CR)). In cause
number 06-07-00009-CR, Mick was convicted of one count of aggravated sexual assault on J.H. and
sentenced to forty years' imprisonment (concurrent), and one count of indecency with a child with
J.H. and sentenced to twenty years' imprisonment (concurrent). In each conviction, the jury also
assessed a $10,000.00 fine against Mick. 
2. Mick does not present a Confrontation Clause issue--M.M. testified at the trial. 


4" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium Shading 2"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00021-CR

                                                ______________________________

 

 

                                 CARL LEONARD LIVELY,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 173rd
Judicial District Court

                                                         Henderson
County, Texas

                                                          Trial Court
No. A-16,142

 

                                                   
                                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

            A
Henderson County jury found Carl Leonard Lively guilty of the aggravated
robbery of the Point 1 Beverage liquor store in Seven Points, Texas, and Lively
has perfected his appeal from that conviction.[1]  

A Robbery in Seven Points, Another in Marshall

            On
July 24, 2007, Phan[2]
Sim, the proprietress of the Point 1 Beverage reported an armed robbery of her
store.  Sim reported to police investigators that the
perpetrator of the robbery was a white male, about thirty-five to forty-five
years of age, who stood about 58 to 510, and had a slender build.  She also described him as having graying hair
and mustache and that his hands were shaking. 
The liquor store had multiple surveillance cameras (both inside the
store building and outside the front of the building) from which video
recordings were obtained and these video recordings were admitted into
evidence.  The in-camera clock shows the
robbery happened about 4:35 p.m.  Sim
described the robber as having arrived and then departed in a dark blue sports
utility vehicle (SUV) and the recording from the outside camera confirmed that
recollection. 

            About
three months after the robbery occurred, police officers presented Sim with a
photographic lineup which contained an array of photographs of six mustachioed
Caucasian males. Livelys picture was one of the six.  Sim recounted at trial that she looked at the
photographic lineup as she performed her clerk duties, waiting on customers of
the store; because the robber had worn a baseball cap and sunglasses, she
covered the eyes and the tops of the heads of the men in the photographs,
finally selecting the picture of Lively as being the person who had robbed her.[3]  Although Sim had picked Livelys photograph
from the lineup, she was unable to identify him at trial, explaining that a
great deal of time had passed, that she had purposely erased as much detail of
the robbery as she could from her mind, and that it was difficult for her to
distinguish one Caucasian man from another. 
It was for this robbery that Lively was charged, tried, and convicted. 

            Only
a few days before the Point 1 robbery, Luckys Liquor in Marshall (Harrison
County) was robbed.  Allen In, the clerk
at Luckys, described his robber as a white male wearing a hat and a
long-sleeved, button-down shirt.  Unlike
the robbery at Point 1, the robber at Luckys did not wear sunglasses but,
instead, used a bandanna to mask the lower part of his face.  However, this ploy was only partially
successful because In said the robber only pulled the mask up as he entered the
store and therefore In was able to see his face.  The robber pulled a pistol from his pants and
used it to threaten In, telling him to empty out the cash register.  In noted that the robber was shaking.  After getting the money from the cash till,
the robber told In to go to the back of the store and In complied; the robber
then left.  In promptly got his pistol
and went outside, where he saw the robber sitting in a dark blue SUV, counting
the money.  When the robber looked up and
saw In pointing his pistol, he sped away in the SUV.  Nevertheless, In fired several shots at the
fleeing vehicle.   

            It
was October 30, 2007, before Lively came to the attention of law enforcement
officers and then only on a matter entirely unrelated to either robbery.  Police responded to a minor accident between
two vehicles in the parking lot of the Wal-Mart in Gun Barrel City, Henderson
County, a neighboring town to Seven Points. 
There was a minor collision of another vehicle with Livelys blue SUV.  Damon Boswell, the first police officer to
arrive at the scene, noticed that Lively seemed nervous and did not appear to
want to make eye contact with Boswell. 
Boswell took note of the license plate number on Livelys vehicle and
reported it to the police dispatcher; he then began to make contact with Lively
and the driver of the other vehicle. 
Shortly thereafter, Officer Dusty Bryant arrived at the scene. Bryant, a
recent hiree with the Gun Barrel City Police Department, had previously been an
investigator for the Seven Points Police Department, where he had investigated
the Point 1 robbery.  In that former
capacity, he had viewed the video recordings from the surveillance cameras of
the robbed store several times.  When he
arrived at the Wal-Mart parking lot to assist Boswell, he immediately believed
Lively to be the person shown on those video recordings as the robber in the
Point 1 robbery.  Bryant pointed out
Livelys similar appearance to that in the Point 1 video recording, which
Boswell had also seen.  The officers also
took note of the fact that Livelys SUV looked similar to the robbers vehicle
in the Point 1 video recording.  

            About
this same time, Boswell was advised by the police dispatcher that the license
plate information he had previously called did not correspond with license
plates issued for Livelys vehicle.  Upon
re-checking the numbers on the license plate, Boswell discovered that the SUV
now bore a completely different license plate from the one he had seen when he
first arrived at the scene.  Boswell had
also noticed pieces of tape on the SUVs windshield, over the vehicles
identification number and the identifying number on the registration
sticker.  Boswell testified these clear
pieces of tape would prevent surveillance cameras from detecting the
identification numbers.  In light of all
these circumstances and becoming increasingly suspicious, Boswell asked Lively
if he could search Livelys SUV, and Lively consented.  In the SUV was a briefcase which contained,
among other items, a loaded and chambered pistol, four or five Texas license
plates, and a screwdriver.  Lively was
arrested for operating a vehicle with no valid drivers license.  Police then inventoried the vehicle and found
a sticker on the passenger side door which concealed a hole in the outer skin
of the vehicle.  After obtaining a search
warrant, police searched Livelys SUV, the search revealing a bullet slug in
the interior part of the door where the hole had been found.  Subsequent testing established that the
bullet slug found in the door of Livelys SUV had been fired from the same
pistol that In had fired at the vehicle which fled from the robbery in
Marshall.  

Photographic Lineup Was Not Suggestive 

            Livelys
first point of error claims the trial court should have granted Livelys motion
to suppress wherein Lively sought to have the photographic lineup shown to Sim
and the fact that Sim had selected Livelys picture from that lineup excluded
from evidence.  Lively claims the lineup
to have been so impermissibly suggestive that Sim was more likely to select his
photograph than the other five in the photographic array. 

            The record before us
contains a color copy of the photographic lineup shown to Sim.  We observe the lineup has six photographs,
each appearing to be in the kind of format of pictures employed with drivers
licenses, showing the face and top of the torso of a Caucasian man, each with a
mustache.  While Lively argues, and was
able to get one States law enforcement witness to agree, that one subject
could possibly be Hispanic, however, this photograph could just as easily be of
an Anglo-American as it could be one of an Hispanic.  That same witness, on cross-examination, also
said the man in the lower right picture could conceivably be of Asian descent,
although it is difficult from observation to draw that same conclusion that the
witness drew.  Lively argues these
comments from one witness support his contention that at least two of the
lineup subjects were of different ethnic or racial backgrounds than Lively,
contributing to what Lively claims to be the impermissibly suggestive nature of
the lineup.  Lively also maintains that
only his picture and that of one other person have any amount of grey hair; we
discern, though, at least one other person with touches of grey at the temples.

            We review the trial courts decision on a
motion to suppress evidence by applying a bifurcated standard of review; that
is, we defer to the trial courts determination of historical facts that depend
on credibility, but we conduct a de novo review of the trial courts
application of the law.  Wiede v.
State, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); see also Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  Generally, we review de novo determinations
of probable cause after granting deference to the trial courts determination
of historical facts.  Guzman, 955
S.W.2d at 87.

            In
most cases regarding an allegedly suggestive lineup or photographic lineup, the
appellant complains that an in-court identification was contaminated or
affected by a prior out-of-court identification in a lineup.  Cf.
Loserth v. State, 963 S.W.2d 770,
77172 (Tex. Crim. App. 1998).  An
in-court identification is inadmissible when it has been tainted by an
impermissibly suggestive pretrial photographic identification.  Id.
at 77172.  This appears to be markedly
different.  Strictly speaking, Lively is
not complaining of Sims in-court identification; indeed, although she was able
to identify him from the lineup she was shown before trial, she could not
identify him at trial.  In the instant
situation, we review whether the trial court abused its discretion in refusing
Livelys request to suppress the photographic lineup and Sims identification
of Lively.  

            In
considering the trial courts ruling, we take into consideration the criteria
for reviewing whether a lineup was impermissibly suggestive.  Suggestiveness may be created by the manner
in which the pretrial identification procedure is conducted (for example, by
police pointing out the suspect or suggesting that a suspect is included in the
lineup or photographic array).  Herrera v. State, 682 S.W.2d 313 (Tex.
Crim. App. 1984).  Another means of
suggestiveness is via the content of the lineup or photographic array itself if
the suspect is the only individual closely resembling the pre-procedure
description.  See Williams v. State, 675 S.W.2d 754 (Tex. Crim. App. 1984)
(finding no impermissibly suggestive procedure even though most of the
participants appeared younger than suspect). 
Furthermore, an individual procedure may be suggestive or the cumulative
effect of the procedures may be suggestive. 
Barley v. State, 906 S.W.2d
27, 33 (Tex. Crim. App. 1995).   

            A
lineup is considered unduly suggestive if other participants are greatly
dissimilar in appearance from the suspect. 
Withers v. State, 902 S.W.2d
122, 125 (Tex. App.Houston [1st Dist.] 1995, pet. refd) (citing United States v. Wade, 388 U.S. 218,
23233 (1967)).  For instance, a lineup
is deemed suggestive when the accused is placed with persons of distinctly
different appearance, race, hair color, height, or age.  Foster
v. California, 394 U.S. 440, 44243 (1969). 
However, simple minor discrepancies between lineup participants will not
render a lineup unduly suggestive.  Partin v. State, 635 S.W.2d 923, 926
(Tex. App.Fort Worth 1982, pet. refd). 
Neither due process nor common sense requires participants in a lineup
to be identical.  Buxton v. State, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985)
(finding no suggestive procedure constituting violation of due process, even
though men in lineup ranged in height from 59 to 62, in weight from 175
pounds to 210 pounds, had various skin tones, and wore different types of
clothing).  In fact, a lineup is not
unduly suggestive where there is a weight range of forty pounds or height range
of five inches.  Id.  In Withers, the defendant was thirty-nine years old, 58 tall,
weighing 160 pounds, and clean shaven at the time of his identification; the
witnesss description was of a person 56 to 57 in height; 150 to 160
pounds; and thirty to thirty-five years of age. 
The four other persons in the [nonphoto] lineup ranged in age from twenty-one
to forty-one, in heights from 59 to 61, and in weight from 155 to 205
pounds; while two had beards, the others (including the subject) were clean
shaven.  The Houston court found the
lineup and identification were not unduly suggestive.  Withers,
902 S.W.2d at 125; see also Turner v. State, 600 S.W.2d 927, 932
(Tex. Crim. App. [Panel Op.] 1980) (lineup of five persons, two of whom have
beards and who are not physically close to defendant in size and hair color,
not impermissibly suggestive); see also
Williams v. State, 675 S.W.2d 754,
757 (Tex. Crim. App. 1984) (defendant appears older than other persons in
lineup).

            Having
reviewed the photographic lineup at issue here, as well as caselaw interpreting
similar allegations, we cannot say the lineup shown to Sim was suggestive, much
less impermissibly suggestive.  Even
considering one subject, the gentleman in the upper left photograph, who Lively
asserts looks Hispanic, he is not grossly dissimilar to the other men in the
array.  It is true his skin tone is
slightly darker than some of the other subjects, and he has a more pronounced
receding hairline, but he clearly is still in the same general range of
appearances as the other five photographs, including Livelys.  (Note that the head of Sims robber was covered
by a baseball cap and the quantity of hair on the perpetrators head would have
not been apparent to her.  Further, Sim
testified that when she examined the photographs in the lineup, she covered the
top part of the faces and it is presumed that this act would have obscured the
bald head as well.)  Additionally, Sim
clearly said Officer Meadows did nothing to prompt her to select Livelys
picture.  The trial court did not abuse
its discretion in denying Livelys motion to suppress. 

Admission of Extraneous
Offense 

            Earlier in this
opinion, the robbery of Luckys Liquor which occurred about five days before
the charged offense was described. 
Lively complains the trial court erred in allowing the State to
introduce evidence of that robbery.  The
two crimes had several similar circumstances. 
In both, the robber was described as a white male in a baseball cap,
with grey hair over the ears and a mustache; both robbers wore long-sleeved,
button-down shirts, displayed a pistol and demanded money; and the
victim-witnesses in both cases described their robbers as shaking.  Both robberies occurred in daylight hours if
not the afternoon,[4]
just a few days apart; and both robbers drove themselves to their heists and
fled in a blue SUV.  There were also
differences between the two crimes. 
Sims robber wore sunglasses, whereas Ins did not and held a bandanna
over his face (although In was able to get a clear look at the robbers face before
he raised the bandanna).  Sims robber
told her to lie down on the floor; Ins told him to go to the back of the
store.  Most distinctive, under Livelys
argument, is the fact that the robberies occurred about 100 miles apart, in two
different counties. 

            Under
the Texas Rules of Evidence, evidence of other crimes, wrongs, or acts is not
admissible to prove the character of a person in order to show action in
conformity therewith. But it may be admissible for other purposes, such as
proof of motive, opportunity, intent, preparation, plan, knowledge, identity,
or absence of mistake or accident.  Tex. R. Evid. 404(b).  The exceptions listed under Rule 404(b) are
neither mutually exclusive nor collectively exhaustive.  Pondexter
v. State, 942 S.W.2d 577, 58384 (Tex. Crim. App. 1996).  Rule 404(b) is a rule of inclusion rather
than exclusion.  De La Paz v. State, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009)
(quoting United States v. Bowie, 232
F.3d 923, 929 (D.C. Cir. 2000)).  The
rule excludes only that evidence that is offered (or will be used) solely for
the purpose of proving bad character and hence conduct in conformity with that
bad character.  Id. at 343 (citing Rankin v.
State, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996) (if evidence (1) is
introduced for a purpose other than character conformity, (2) has relevance to
a fact of consequence in the case and (3) remains free of any other
constitutional or statutory prohibitions, it is admissible)).  The proponent of uncharged misconduct
evidence need not stuff a given set of facts into one of the laundry-list
exceptions set out in Rule 404(b), but he must be able to explain to the trial
court, and to the opponent, the logical and legal rationales that support its
admission on a basis other than bad character or propensity purpose.  Id.

            Whether
extraneous offense evidence has relevance apart from character conformity, as
required by Rule 404(b), is a question for the trial court.  Moses
v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  So, too, is a ruling on the balancing of the
probative value against the counter factors set out in Rule 403, although that
balance is always slanted toward admission, not exclusion, of otherwise
relevant evidence.  See Montgomery v. State,
810 S.W.2d 372, 388 (Tex. Crim. App. 1991) (op. on rehg) (presumption under
Rule 403 is that probative value outweighs prejudicial effect unless in the
posture of the particular case the trial court determines otherwise).  Thus, a trial courts ruling on the
admissibility of extraneous offenses is reviewed under an abuse of discretion
standard.  Prible v. State, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005).  So long as the trial courts ruling is within
the zone of reasonable disagreement, there is no abuse of discretion and the
trial courts ruling will be upheld.  Montgomery, 810 S.W.2d at 391.  A trial courts ruling is generally within
this zone if the evidence shows that (1) an extraneous transaction is relevant
to a material nonpropensity issue, and (2) the probative value of that evidence
is not substantially outweighed by the danger of unfair prejudice, confusion of
the issues, or misleading of the jury.  Santellan v. State, 939 S.W.2d 155, 169
(Tex. Crim. App. 1997).

            The
State urged admission of the extraneous robbery at Luckys on the ground that
the identity of the robber at Point 1 was clearly at issue.  Lively stressed, through his
cross-examination of Sim, that she was unable to identify Lively, in court, as
her robber.  Further, she acknowledged
that when she selected Livelys picture in the photographic lineup, she was not
100% certain he was the robber.[5]

            In
Taylor v. State, 920 S.W.2d 319, 322
(Tex. Crim. App. 1996), no error was found when an extraneous robbery-murder
was held admissible where it occurred a few blocks from where the charged
capital murder occurred; both victims were elderly and strangled with a wire
coat hanger.  In Burton v. State, 230 S.W.3d 846, 84851 (Tex. App.Houston [14th
Dist.] 2007, no pet.), the defendant confessed to robbing several Houston-area
banks.  The State charged him with one
robbery, then introduced two extraneous cases. 
In his confession, Burton had told police his general method of robbing
banks:  he made certain there was no on-site
security, he approached young tellers who he did not think would protest or
argue, he wore a hat and sunglasses, and presented a note demanding money.  In opposing introduction of the extraneous
offenses, Burton stressed variations in clothing (other than the hat and
sunglasses):  that he used a toy gun in
one offense and took smaller denominations of bills in one case.  Nevertheless, the appellate court found no
error in admission of the extraneous crimes.   


            In
Siqueiros v. State, 685 S.W.2d 68,
7071 (Tex. Crim. App. 1985), the defense impeached the complainants
identification, pointing out the existence of poor lighting in the room where
she was raped which would hinder identification, inconsistencies in her initial
description of her assailant, and the fact that she had consumed beer and
marihuana before going to bed.  Further,
while picking out the defendants picture from a photographic lineup, she
expressed to police that she could not be positive in her identification.  Both the charged offense and the extraneous
crime involved sexual attacks on fifteen-year-old girls, asleep alone in their
bedrooms at about 3:00 a.m.; in both cases, the assailant had entered through a
bedroom window, put his hand over the girls mouths and told them that he would
kill them if they resisted and that he had a knife.  Both victims identified Siqueiros as their
attacker.  Siqueiross fingerprints were
found at the scene of the extraneous crime. 
Although latent fingerprints were found at the scene of the primary
offense, they could not be identified as Siqueiross.  The Texas Court of Criminal Appeals held the
extraneous offense was admissible regarding identity.  Id. at
72.

            We
find the trial court did not abuse its discretion in finding evidence of the
extraneous-offense robbery to be relevant to the case at hand.  There were several similarities, as well as a
few differences.  Looked at in toto, though, there are sufficient
commonalities between the two offenses such that the trial courts admission
was clearly within the zone of reasonable disagreement.  Accordingly, we will not disturb the trial
courts finding of admissibility.

403 Balancing

            Lively
also complains that even if it is determined that the issue of identity was
raised and the extraneous offense was therefore relevant and admissible, the
probative value of the other robbery was substantially outweighed by the danger
of unfair prejudice.  See Tex. R. Evid. 403.  The relevant
criteria in determining whether the prejudice of an extraneous offense
substantially outweighs its probative value include:

(1) how compellingly the extraneous offense
evidence serves to make a fact of consequence more or less probable--a factor
which is related to the strength of the evidence presented by the proponent to
show the defendant in fact committed the extraneous offense;

 

(2) the potential the other offense evidence has
to impress the jury in some irrational but nevertheless indelible way;

 

(3) the time the proponent will need to develop
the evidence, during which the jury will be distracted from consideration of
the indicted offense; [and]

 

(4) the force of the proponents need for this
evidence to prove a fact of consequence, i.e., does the proponent have other
probative evidence available to him to help establish this fact, and is this
fact related to an issue in dispute.

 

Santellan, 939 S.W.2d at 169 (footnote omitted) (citing Montgomery, 810 S.W.2d at 38990).

Did the Extraneous Offense Make a
Fact of Consequence More or Less Probable?

            We
find the first factor weighs in favor of admission of the extraneous
offense.  There were several marked
similarities between the two robberies. 
Ins identification of his robber, coupled with the evidence that a
bullet fired from Ins pistol was found in Livelys truck, provided compelling
evidence that Lively committed that robbery. 
Livelys involvement with that robbery made a fact of consequence (i.e.,
whether Lively robbed Point 1) more likely, as both robbers had features and
dress in common (middle-aged white man with a mustache; long-sleeved,
button-down shirt; baseball cap); both tried to hide their faces; were
described as shaking; brandished a pistol; and were seen leaving and departing
in a blue SUV.  

Did the Extraneous Offense Have the
Potential to Impress the Jury in an irrational . . . indelible way?

 

            Arguably,
Lively was forced to defend against a second charge for which he had not been
indicted, a crime which, at oral argument, the State admitted was the stronger
of the two cases.  However, the standard
in examining this factor is whether the evidence of the extraneous conduct
unfairly prejudiced the defendant.  See Manning v. State, 114 S.W.3d 922,
928 (Tex. Crim. App. 2003).  Evidence is
unfairly prejudicial only when it tends to have some adverse effect upon a
defendant beyond tending to prove the fact or issue that justifies its
admission into evidence.  Casey v. State, 215 S.W.3d 870, 883
(Tex. Crim. App. 2007) (citation omitted). 
We have already discussed how the Luckys robbery was admissible to
prove identity in the primary offense. 
We find nothing in the record to suggest the extraneous-offense
evidence, concededly relevant evidence, acted to lure the factfinder into
declaring guilt on a ground different from proof specific to the offense
charged.  Old Chief v. United States, 519 U.S. 172, 180 (1997).  This factor argues in favor of
admission.  

Time Spent by Proponent of the
Evidence

            The
States case-in-chief consumed over two days, having about 130.5 pages of
direct examination of States witnesses.[6]  Of this time, approximately 42.5 pages of
direct examination during the trial was addressed to witnesses proving up the
extraneous offense at Luckys Liquor. 
Thus, by our reckoning, the State spent about thirty-three percent of
its time on the extraneous offense.  

            We
find this factor weighs against admission. 
Compare  Toliver
v. State, 279 S.W.3d 391, 39899 (Tex. App.Texarkana 2009, pet. refd)
(about twenty-three percent of direct testimony toward extraneous weighs
against admission); Russell v. State,
113 S.W.3d 530, 546 (Tex. App.Fort Worth 2003, pet. refd) (almost thirty
percent of trial testimony [the opinion does not specify if the appellate court
considered only direct testimony proving up one of two extraneous offenses
weighed against admission]).  

Proponents Need for the Extraneous Evidence

            The fourth factor to be
considered is the force of the proponents need for this evidence to prove a
fact of consequence, i.e., does the proponent have other probative evidence
available to him to help establish this fact, and is this fact related to an
issue in dispute.  De La Paz, 279 S.W.3d at 349 (quoting Wyatt v. State, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000)).[7]  As has been said, identity was clearly at
issue, and Livelys defensive theory was to contest the States evidence that
Lively was the perpetrator of the robbery. 
Lively persistently attacked Sims certainty of identification and
offered an alibi for his presence at the time the robbery took place.  Although three law enforcement officers said
they had reviewed the surveillance video recording and concluded that Lively
was the Point 1 robber (a conclusion at which the jury, having also viewed the
recording, could have likewise arrived), Sim, the victim, was less certain than
they and could not identify Lively in court. 
Based on these circumstances, this factor weighs in favor of admission.

            Reviewing the totality
of the circumstances and bearing in mind that there exists a presumption in
favor of admission of relevant evidence,[8] we
find the trial court did not err in admitting evidence of the Luckys Liquor
robbery.  Livelys point of error is
overruled. 

 

Sufficiency of Evidence

            Standards of Review

            Livelys third and
fourth points of error complain the evidence was legally and factually
insufficient to support the jurys verdict, respectively.  In reviewing the legal sufficiency of the
evidence, we view the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Laster v. State, 275
S.W.3d 512, 517 (Tex. Crim. App. 2009);
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  In a legal sufficiency review, we must defer
to the jurys ability to resolve conflicts in testimony, weigh the evidence,
and draw reasonable inferences from the evidence.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

            In
contrast to a legal sufficiency review, when conducting a factual sufficiency
review, all evidence is viewed in a neutral light, favoring neither party.  Steadman
v. State, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We are to determine if the evidence supporting
the verdict, although legally sufficient, is nevertheless so weak that the
verdict is clearly wrong or manifestly unjust or whether the verdict is against
the great weight and preponderance of the conflicting evidence.  Watson,
204 S.W.3d at 41415.  While a factual
sufficiency review allows a very limited degree of second-guessing the jury,
the review should be deferential, maintaining a high level of skepticism about
the jurys verdict before a reversal can occur. 
Roberts v. State, 220 S.W.3d
521, 524 (Tex. Crim. App. 2007); Watson,
204 S.W.3d at 417.

            A
review of both the legal sufficiency and the factual sufficiency of the
evidence should be measured by the elements of the offense as defined by a
hypothetically-correct jury charge.  Grotti v. State, 273 S.W.3d 273 (Tex.
Crim. App. 2008); Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997). 
Such a charge accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the States burden of proof or
unnecessarily restrict the States theories of liability, and adequately
describes the particular offense for which the defendant was tried.  Villarreal
v. State, 286 S.W.3d 321 (Tex. Crim. App. 2009); Malik, 953 S.W.2d at 240.  Lively
makes no assertion the charge in this case was in any way deficient or
incorrect.   

            In
Livelys case, the State had to prove that (1) Lively (2) committed theft of
property; (3) intended to obtain or maintain control over that property;
(4) intentionally or knowingly threatened or placed Sim in fear of imminent
bodily injury or death; (5) while exhibiting or using a deadly weapon (here, a
firearm).  Livelys appellate challenges
to the sufficiency of the evidence center on identity:  Sims identification of Lively in the photographic
lineup and law enforcements investigation, contravention of his presence at
the liquor store on the day of the robbery as provided by Livelys alibi
witness, and the quality of investigation done by law enforcement.  Lively does not challenge the second, third,
or fourth elements stated above.

            The
Evidence Is Legally Sufficient

            Sim,
the proprietress of the robbed Point 1 Beverage liquor store, failed to make an
in-court identification of Lively.  At
trial and on appeal, Lively makes much of the cross-examination of Sim where
she appeared less than certain when she picked Livelys picture out of the
photographic array.  At trial, Sim said
that when she picked Livelys picture from the photographic array, she was
[n]ot 100 percent sure.  But I think
that guy.  Under these points of error,
Lively again emphasizes what he views as the overly suggestive nature of the
photographic lineup shown to Sim.    

            Notwithstanding
weaknesses in Sims identification, there was other substantial evidence
supporting the jurys verdict.  The video
recordings from the Point 1 surveillance cameras were introduced and these
recordings showed the face of the robber from three different angles; the
exterior camera shows the robbers SUV, a vehicle which matches the description
of the one driven by Lively.  The bottom
of the robbers face can be seen, which the jurors could compare to the
pictures of Lively in the lineup and by his truck in the Wal-Mart parking lot
three months after the robbery and to the face of Lively as seen in the
courtroom.  In addition, three still
photographs from the video were admitted which the jury could compare.  Three law enforcement officers, Boswell,
Bryant, and Meadows, each testified that they had viewed the video and were
sure, when they saw Lively at the Wal-Mart parking lot three months after the
robbery, that he was the robber in the video recording.[9]  There was strong circumstantial evidence that
Lively changed the license plates on his SUV after the motor vehicle accident
at the Wal-Mart parking lot, plus Lively was in possession of several other
license plates, a screwdriver, and a pistol at that time.  Lively was described as overtly nervous . .
. stand-offish and behaving as though he didnt . . . really [want] to be
there as soon as Boswell made contact with him.  Boswell also noted Livelys demeanor was
different from what Boswell encountered where people had been in a wreck;
Lively acted more nervous than upset and would not make eye contact with the
officer.  All of these pieces of evidence
support the verdict.  Finally, the
evidence of the robbery at Luckys Liquor, which we have found properly
admitted, supports the jurys finding that Lively was the Point 1 robber.  We find the evidence to be legally sufficient
to support the jurys verdict.   

            Factual
Sufficiency

            For
review of the factual sufficiency of the evidence, we must consider all the
evidence, including that contrary to the verdict.  On appeal, Lively points to Sims uncertain
identification; Livelys alibi witness; and shortcomings in law enforcements
investigation, including failing to pursue two other suspects, as rendering the
verdict clearly wrong or unjust.  

            We
have discussed at length Sims identification. 
Regarding a review of the factual sufficiency of the evidence, the
strongest evidence contrary to the verdict was Livelys alibi witness.  Martin Steed said his birthday was July 23
and that on July 24, 2007 (the day the Point 1 robbery occurred), Lively
and his female companion spent the entire afternoon that day with Steed.  Steed testified he, Lively, and Livelys
companion were together from late that morning until about 10:00 p.m. that
night.  He testified that the three of
them drove around locations in Harrison County, but never went to Henderson
County.  It is the jurys prerogative to
believe or disbelieve contradictory testimonial evidence, which turns on an
evaluation of credibility and demeanor.  Johnson v. State, 176 S.W.3d 74, 78
(Tex. App.Houston [1st Dist.] 2004, pet. refd) (jury free to reject
defendants alibi defense); Escovedo v.
State, 902 S.W.2d 109, 115 (Tex. App.[1st Dist.] 1995, pet. refd) (The
jury may believe or disbelieve all or any part of a witness testimony.).  Steed also acknowledged that while he was
aware about November 2007 that Lively had been arrested, he never contacted
police or prosecutors with this exculpatory information until Livelys attorney
called a month before trial (trial was October 2008).  Although Steed spoke with a detective in
November 2007, he made no mention of this day spent with Lively.  The simple fact that contrary evidence exists
is not enough to support a finding of factual insufficiency.  See
Goodman v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001).  

            Through
cross-examination of law enforcement witnesses, Lively also pointed out that
there were possibly two other suspects, although those were ruled out as
suspects by law enforcement officers during the course of their
investigation.  Investigator Bryant said
law enforcement found one person with a Tahoe with a license plate similar to
the one given law enforcement by Sim after her store was robbed; officers ruled
that person out after seeing his drivers license photograph and determining
the truck was the wrong color.  Lively
complains that the police did not contact that vehicle owner to ask if the
vehicle had recently been painted or if the owner had loaned the vehicle to
someone else.  The State is not required
to disprove a reasonable alternative hypothesis.  Dade v.
State, 848 S.W.2d 830, 832 (Tex. App.Houston [14th Dist.] 1993, no pet.).  

            About
a month after the Point 1 robbery, police also received a tip from a woman
working at a local golf course who thought one of the patrons of that course
could be the Point 1 robber.  Bryant went
to the golf course and saw the man, but eliminated him as a suspect because
Bryant did not believe that the man to whom he had been alerted resembled the
robber in the video.  Lively complains
that Bryant did not remember, at trial, that mans hair color or whether he had
a mustache.  He further points out that
the police did not determine what kind of vehicle the man drove or where he had
been the day of the robbery. Again, the existence of an alternative reasonable
hypothesis does not render the evidence factually insufficient.  Richardson
v. State, 973 S.W.2d 384, 387 (Tex. App.Dallas 1998, no pet.).

            Lively
also complains that Bryant was overanxious to find the robber.  The full quote from Meadows was in answer to
questions about why, after drawing up as many as three photographic lineups
other than the one shown to Sim, Bryant did not show those lineups to Sim.  Chief Meadows responded, Mr. Bryant was, the
best way of saying it, overanxious to find the suspect, and everyone that he
thought would be, he would do a criminal history, photo lineup, and then ask me
or the chief at that time what we thought. 
And it was dropped at that point. 


            Lively
also complains (1) that the police made no attempt to obtain any surveillance
video recordings from the Wal-Mart parking lot, which might determine if Lively
had changed the license plate; (2) that there was no testimony whether the
SUV at the Point 1 robbery had a bug shield on the front (as did Livelys SUV);
(3) that no DNA evidence or hair fibers were sought (officers did try to get
fingerprints from the cash drawer the robber touched, but only smudges were
present).  The cap worn by the robber was
never found; no tire mark evidence was sought at the scene, and the license
plate number Sim reported seeing on the fleeing truck was never located.  Some of these matters were explained at
trial.  There was no indication Sim saw
the front of her robbers truck; the surveillance video of Point 1s parking
lot did not offer a good view of the vehicles front.  There was no evidence any surveillance video
from the Wal-Mart parking lot existed.  As
to no evidence of tire marks being acquired, Bryant did say on re-direct examination
it was neither possible to get tire mark evidence from the concrete drive, nor
could footprints be obtained.  Lively
cannot be faulted for calling into question the thoroughness of the law
enforcement investigation.  Despite that,
he has not demonstrated that there was contrary evidence which rendered the
jurys verdict clearly wrong or manifestly unjust.   

            We
find the evidence factually sufficient to support the jurys verdict.  We overrule Livelys fourth point of error
and affirm the trial courts judgment and conviction.  

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          January
13, 2010

Date Decided:             February
5, 2010

 

Do Not Publish











[1]Originally appealed to the Twelfth Court of Appeals,
this case was transferred to this Court by the Texas Supreme Court pursuant to
its docket equalization efforts.  See Tex.
Govt Code Ann. § 73.001 (Vernon 2005). 
We are unaware of any conflict between precedent of the Twelfth Court of
Appeals and that of this Court on any relevant issue.  See
Tex. R. App. P. 41.3.

 





[2]Sim
said her first name is pronounced pan. 






[3]At
trial, Tim Meadows, the officer who showed Sim the photographic lineup, did not
recall her waiting on customers while he showed her the lineup.  When she testified at trial, Sim said she
thought she had looked over the lineup for ten to fifteen minutes.  Meadows did not testify as to how long Sim
had viewed the lineup; he described her selection of the robbers photograph as
[s]omewhat quick, but not like, off the bat, []thats him.[]  

 





[4]In
testified Luckys was robbed about 4:45 p.m. 
Although Sim did not give a specific time, the date and time display on
the surveillance video from her store shows the robbery occurred at about 4:35
p.m.  

 





[5]It
bears noting that it is clear from the reporters record Sim had some
difficulty understanding some questions and on occasion making herself
understood to the attorneys questioning her. 
Sim was a native of Cambodia, where she had lived until age
twenty-seven; at the time of trial, she had been in the United States about
twenty-six years.  Even so, Sim was not
reticent to make it explicitly plain when she did not understand a question and
was an obviously competent witness.  

 





[6]In
reaching this figure, we have excluded voir dire of witnesses, arguments, bench
conferences, and of course cross-examination by Lively. 

 





[7]Admittedly,
in some respects, weighing this factor in favor of admission of evidence of the
extraneous offense instead of against it seems somewhat incongruous.
Nevertheless, we are bound to consider it in such fashion.

 





[8]McFarland v. State, 845 S.W.2d 824, 837
(Tex. Crim. App. 1992); Montgomery,
810 S.W.2d at 388.

 





[9]Boswell
was 90 percent sureMeadows and Bryant 100 percent.