ACCEPTED
01-14-00685-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/17/2015 12:00:39 PM
CHRISTOPHER PRIN
CLERK

## No. 01-14-00685-CR

In the
**Court of Appeals**
For the
**First District of Texas**
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

4/17/2015 12:00:39 PM

CHRISTOPHER A. PRINE
Clerk

———————◆———————

**No. 1408986**
In the 262nd District Court
Of Harris County, Texas

———————◆———————

**KANAVIOUS DORSEY**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

———————◆———————

STATE'S APPELLATE BRIEF

———————◆———————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**JAMIE BURRO**
Assistant District Attorney
Harris County, Texas

**KIMBERLY APERAUCH STELTER**
Assistant District Attorney
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone: 713.755.5826
stelter_kimberly@dao.hctx.net
State Bar Number: 19141400

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 9.4(g) and Texas Rule of Appellate Procedure 39.1, the State requests oral argument only if appellant requests oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

*Counsel for the State:*

**Devon Anderson** — District Attorney of Harris County

**Kimberly Aperauch Stelter** — Assistant District Attorney on appeal

**Jamie Burro** — Assistant District Attorney at trial

*Appellant or criminal defendant:*

**Kanavious Dorsey**

*Counsel for Appellant:*

**Maverick Ray, Gilberto Villarreal** — Defense Counsel on appeal

**Mandy Miller** — Defense Counsel at trial

*Trial Judge:*

**Honorable Denise Bradley** — Judge Presiding

i

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

IDENTIFICATION OF THE PARTIES .......................................................i

TABLE OF CONTENTS.................................................................... ii

INDEX OF AUTHORITIES................................................................ iii

STATEMENT OF THE CASE..............................................................1

STATEMENT OF FACTS ................................................................1

SUMMARY OF THE ARGUMENT ......................................................4

REPLY TO APPELLANT'S FIRST POINT OF ERROR.......................................5

REPLY TO APPELLANT'S SECOND POINT OF ERROR....................................8

PRAYER ..............................................................................18

CERTIFICATE OF SERVICE ...........................................................19

CERTIFICATE OF COMPLIANCE.......................................................20

# INDEX OF AUTHORITIES

**CASES**

*Aguilar v. State,*
  468 S.W.2d 75 (Tex. Crim. App. 1971) ........................................................................ 6

*Bone v. State,*
  77 S.W.3d 828 (Tex. Crim. App. 2002) ................................................................... 9, 10

*Bradley v. State,*
  359 S.W.3d 912 (Tex. App. –
  Houston [14th Dist.],2012, pet. ref'd) ........................................................................ 6

*Brooks v. State,*
  323 S.W.3d 893 (Tex. Crim. App. 2010) ..................................................................... 5

*Chambers v. State,*
  805 S.W.2d 459 (Tex. Crim. App. 1991) ..................................................................... 6

*Clayton v. State,*
  235 S.W.3d 772 (Tex. Crim. App. 2007) ..................................................................... 6

*Davis v. State,*
  930 S.W.2d 765 (Tex. App. –
  Houston [1st Dist.], pet. ref'd)................................................................................... 11

*Ex Parte Imoudu,*
  284 S.W.3d 886 (Tex. Crim. App. 2009) ..................................................................... 9

*Ford v. State,*
  794 S.W.2d 863 (Tex. App.
  –El Paso 1990, pet. ref'd) ........................................................................................... 7

*Gamboa v. State,*
  296 S.W.3d 574 (Tex. Crim. App. 2009) ................................................................... 15

*Goodspeed* v. State,
  187 S.W.3d 390 (Tex. Crim. App. 2005) ................................................................... 10

*Greene v. State,*
  124 S.W.3d 789 (Tex. App. –
  Houston [1st Dist.],2003, pet. ref'd).......................................................................... 11

*Harris v. State,*
  2014 WL 1912539 (Tex. App.—
  Houston [1st Dist.] 2014) (mem. opin., not designated for publication) ..................... 11

*Jackson v. State,*
  657 S.W.2d 123 (Tex. Crim. App.1983) ............................................................... 13, 15

*Jackson v. State,*
   973 S.W.2d 954 (Tex. Crim. App. 1998) ........................................................ 12, 14, 16

*Jackson v. Virginia*,
   443 U.S. 307319 (1979) ....................................................................................... 5

*Johnson v. State*,
   871 S.W.2d 183 (Tex. Crim. App. 1993) ............................................................. 6

*King v. State*,
   29 S.W.3d 556 (Tex. Crim. App. 2000) ............................................................... 6

*Lopez v. State,*
   343 S.W.3d 137 (Tex. Crim. App. 2011) ............................................................ 11

*Loserth v. State,*
   963 S.W.2d 770 (Tex. Crim. App. 1998) ............................................................ 15

*Mallett v. State*
   65 S.W.3d 59 (Tex. Crim. App. 2001) .................................................................. 9

*Mata v. State,*
   226 S.W.3d 425 (Tex. Crim. App. 2007) ............................................................ 11

*Mitchell v. State,*
   68 S.W.3d 640 (Tex. Crim. App. 2002) .............................................................. 10

*Neil v. Biggers,*
   409 U.S. 188 (1972) ........................................................................................... 13

*Ortiz v. State,*
   93 S.W.3d 79 (Tex. Crim. App. 2002) ................................................................ 12

*Rylander v. State,*
   101 S.W.3d 107 (Tex. Crim. App. 2003) ............................................................ 10

*Santos v. State,*
   116 S.W.3d 447 (Tex. App.—
   Houston [14th Dist.] 2003, pet. ref'd) ................................................................ 13

*Strickland v. Washington,*
   466 U.S. 668 (1984) ............................................................................................. 9

*Thompson v. State,*
   9 S.W.3d at 808, 813 (Tex. Crim. App. 1999) ...................................................... 9

*Williams v. State,*
   301 S.W.3d 675 (Tex. Crim. App. 2009) .............................................................. 9

**STATUTES**

TEX. PENAL CODE § 29.03(a)(3)(A) (West 2011) ...............................................................5

TEX. PENAL CODE § 38.04 (West 2010) ............................................................................5

**RULES**

TEX. R. APP. P. 38.2(a)(1)(A) ............................................................................................i

TEX. R. APP. P. 39.1 ...........................................................................................................i

TEX. R. APP. P. 9.4(g) ........................................................................................................i

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

The State charged appellant by indictment with the felony offense of aggravated robbery (CR-17).[1] After a trial, the jury found appellant guilty of the offense as charged, and the trial court assessed punishment at 20 years in the Institutional Division of the Texas Department of Criminal Justice (CR-141). Appellant filed timely written notice of appeal (CR-145).

——————————◆——————————

## STATEMENT OF FACTS

On the afternoon of November 1, 2013, Alice Fusilier had just withdrawn $450 from her bank to pay her utility bills (RR3-44,45,46). On the way home the 72-year-old retiree stopped at a convenience store to buy some cigarettes (RR3-47, 58). As she got out of her vehicle, she noticed a red car pulling into the convenience store parking lot (RR3-48). The vehicle stopped and a man got out (RR3-49). He turned and came toward Fusilier (RR3-49). Fusilier thought the man was going to the car parked next to her, so she moved up against the wall to let him pass (RR3-49). The man stepped towards the car as if that were his destination, but

---

[1] CR refers to the Clerk's Record, and the number following refers to the page in the Clerk's Record. RR refers to the Reporter's Record. The number following RR is the volume number, and the number following the dash is the page within that volume.

as Fusilier passed he jumped back out behind her and hit her in the back of the head with his closed fist (RR3-49, 51). Fusilier raised her arm, and the man snatched her purse off her shoulder (RR3-49). He then ran back to the passenger side of the car and got in (RR3-49). Fusilier chased after him so that she could see the license plate of the vehicle (RR3-49). After she looked at the plate, she ran into the store and asked to call the police (RR3-49).

Fusilier described the car as a maroon, reddish color, fairly new model sedan with black tinted windows (RR3-52, 71). She described the license plate as being black and white (RR3-54). Fusilier was not sure of all the numbers and letters on the plate, but she told the police that she thought it was either BW2225 or BW2M25 (RR3-53, 129).

A few days later Officer Rochi was on surveillance in the parking lot of Fusilier's bank when he viewed a maroon colored four door Chevrolet Malibu sedan with a black and white license plate reading BB2N125 (RR3-107). [2] The windows were "limo tinted," meaning tinted so dark that one could not see inside (RR3-108). Officer Rochi followed the car and watched as appellant exited from

_____

[2] Officer Rochi noted that the "N" and "1" next to each could look like an "M", making the second plate number given by Fusilier just one off from that of the vehicle spotted by Rochi (RR3-129).

2

the driver's side of the vehicle (RR3-109). The passenger was Prince Woods, who was also the registered owner of the car (RR3-109).

The police made two photo arrays, one including a picture of Prince Woods and one with a photo of appellant (RR3-132). Officer Hartford showed the photo arrays to Fusilier (RR3-159). He did not know which individuals were the suspects; he explained that HPD administers the photo arrays in a double-blind manner so that the person administering the presentation does not know who the suspect is (RR3-159).

When Fusilier came across appellant's photo Hartford noticed that she stiffened, her eyes got wide, and she put the photo aside (RR3-161). Fusilier was very deliberate in her actions, and after looking at all the photographs she identified appellant's photo as looking like the man that had hit her in the head (RR5-162).

Fusilier's identification of appellant in the photo array was classified by Hartford as a "strong tentative ID," meaning that it "really looks like the person, but I'm not sure." (RR3-148). Seeing appellant in court and in person, however, Fusilier testified that she was confident that appellant was the one who had robbed her (RR3-99-100).

In his defense, appellant's girlfriend, Chastity Smith, testified that appellant was with her all day on the day of the robbery (RR3-170-71). She claimed to

3

remember the day because it was her mother's birthday, and she had posted a picture on Instagram of herself and appellant together before going over to her mother's home for a small celebration (RR3-173). No one else testified verifying appellant's presence at the gathering, although several of Smith's relatives were also present (RR3-181). Smith also initially said she had never heard of Prince Woods, although she later admitted to having heard of the name (RR3-177, 182-83, 193-94).

———————◆———————

## SUMMARY OF THE ARGUMENT

The evidence is sufficient to find that appellant was the individual who committed aggravated robbery. Fusilier identified appellant in a photo array and in court as the person who hit and robbed her, and appellant was found a few days later in the same location driving the vehicle and bearing plates which substantially matched the description given by Fusilier.

Appellant has not provided a sufficient record to establish that his counsel was ineffective for failing to file a motion to suppress or to object to the pre-trial and in-court identifications by the complainant. The pre-trial identification was not impermissibly suggestive. Even if the pre-trial identification had been impermissibly suggestive it did not taint the in-court identification of appellant by the complainant. Accordingly, appellant has failed to show that his counsel was

4

ineffective, as he has not established the trial court would have granted a motion to suppress or objection to the pre-trial and in-court identifications.

———————◆———————

## REPLY TO APPELLANT'S FIRST POINT OF ERROR

In his first point of error, appellant contends that the evidence in this case is legally insufficient. Appellant was charged with aggravated robbery of an elderly person. TEX. PENAL CODE § 29.03(a)(3)(A) (West 2011). More specifically, the State was required to prove that appellant (1) in the course of committing theft of property owned by Fusilier, with intent to obtain and maintain control of the property, (2) intentionally or knowingly caused bodily injury to Fusilier by striking her with his hand, and (3) at the time Fusilier was at least 65 years of age (CR-17). Appellant does not argue with the fact that an aggravated robbery was committed in this case; his sole contention is that the evidence was insufficient to prove that he was the individual who committed it.

### A. Standard of Review

The standard of review for a legal sufficiency analysis is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). The jury is the sole judge of the

5

weight of the evidence under this review and can choose to believe all, some, or none of it. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). The presumption is that the jury resolved conflicting inferences in favor of the verdict, and a reviewing court should defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Evidence can be legally sufficient for a conviction even if it is entirely circumstantial. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000). The standard of review for circumstantial and direct evidence is the same. *Id*. It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

## B. Application to the Facts

In the instant case, Fusilier identified appellant both in a photo array and at trial as the person who hit her on the head and stole her purse. The testimony of a single eyewitness can be enough to support a conviction. *Aguilar v. State,* 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Bradley v. State*, 359 S.W.3d 912, 917-18 (Tex. App. –Houston [14th Dist.],2012, pet. ref'd)

Appellant contends the pretrial identification of him in a photo array was not positive, and that Fusilier's in-court identification of appellant was tainted by the

prosecutor showing her two photos of appellant a week prior to trial. (appellant's brief, p. 10). After looking at two photo arrays, Fusilier identified appellant and only appellant as the person who robbed her, but she said she did not know for sure (RR3-56). However, she testified that after seeing him in person, she strongly believed that he was the person who attacked her (RR3-56). As the prosecutor pointed out, there is a difference between seeing a photo in a photo-spread and seeing an individual in person, with the latter being a far more accurate way to size up a suspect (RR3-56). While Fusilier's interaction with appellant was not long, it was up close and in broad daylight; Fusilier testified she got a good look at appellant as he approached her and as he passed by on the walkway about two feet away (RR3-49, 51). Fusilier's in-court identification was admissible and sufficient for the jury to conclude that Appellant was the perpetrator. *Ford v. State*, 794 S.W.2d 863, 867 (Tex. App. –El Paso 1990, pet. ref'd) (holding in-court identification alone enough to convict appellant of aggravated robbery).

Furthermore, Fusilier's identification of appellant was not the only evidence tying appellant to the crime. Appellant was observed just a few days after the robbery in the same bank parking lot driving a vehicle matching the color, style, and window tinting described by Fusilier. While the make of the car was not identical to that written in the offense report, Fusilier stated that she was not familiar with model years and did not remember reading a brand or name on the

vehicle (RR3-73). Similarly, her memory of the license plate sequence was not complete, but all the numbers and letters she was sure of were identical to the numbers and letters on the vehicle appellant was found driving (RR3-129). Fusilier's identification of appellant, when combined with the evidence of appellant being in the same bank parking lot driving a vehicle substantially matching the description given by Fusilier and bearing a license plate substantially similar to what she reported to the police, was more than sufficient for the jury to have found appellant guilty of aggravated robbery.

Accordingly, appellant's first point of error is without merit and should be overruled.

———————◆———————

## REPLY TO APPELLANT'S SECOND POINT OF ERROR

In his second point of error, appellant contends that his counsel was ineffective for failing to file a motion to suppress Fusilier's pre-trial and in-court identifications of appellant.

### A. Standard of Review on Ineffective Assistance of Counsel

To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's

8

unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668 (1984); *Ex Parte Imoudu*, 284 S.W.3d 886, 869 (Tex. Crim. App. 2009). Failure to make either one of these required showings defeats an ineffectiveness claim. *See Williams v. State,* 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

Courts indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance; therefore, appellant must overcome the presumption that the challenged action constituted "sound trial strategy." *Williams,* 301 S.W.3d at 687. This review is highly deferential to counsel, and courts do not speculate regarding counsel's trial strategy. *Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To prevail on an ineffective assistance claim, the appellant must provide an appellate record that affirmatively demonstrates that counsel's performance was not based on sound strategy. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex. Crim. App. 2001);*see Thompson v. State,* 9 S.W.3d at 808, 813 (Tex. Crim. App. 1999) (holding that record must affirmatively demonstrate alleged ineffectiveness); *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) (holding that record on appeal must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions,

regardless of his or her subjective reasoning). Because the reasonableness of trial counsel's choices often involves facts that do not appear in the appellate record, the Court of Criminal Appeals has stated that trial counsel should ordinarily be given an opportunity to explain his actions before a court reviews the record and concludes that counsel was ineffective. *See Rylander v. State,* 101 S.W.3d 107, 111 (Tex. Crim. App. 2003); *Bone,* 77 S.W.3d at 836; *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). If counsel's strategic reasons for the challenged conduct are not reflected in the record, appellate courts should not assume a strategic reason did not exist and find counsel's performance deficient unless there is no plausible professional reason for the challenged conduct. *Bone*, 77 S.W.3d at 836; *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

**B. Counsel was not ineffective for failing to file a motion to suppress the pre-trial identification.**

*1) The record on direct appeal is insufficient to establish appellant's claim of ineffective assistance of counsel.*

Appellant's contention is that defense counsel was ineffective for failing to suppress Fusilier's pre-trial and in-court identifications of appellant. But appellant chose not to file a motion for new trial, and nothing in the record indicates that his counsel had an opportunity to explain his trial strategy. Because the record is silent as to trial counsel's reasons for not filing a motion to suppress or objecting to the pre-trial and in-court identifications, appellant has not overcome the strong

presumption that counsel's decisions were based on trial strategy. *Lopez v. State,* 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *Davis v. State,* 930 S.W.2d 765, 769 (Tex. App. –Houston [1st Dist.], pet. ref'd) (finding defendant failed to satisfy the first prong of *Strickland* because, without testimony by trial counsel, the court could not meaningfully address his reasons for not filing a motion to suppress); *see also Mata v. State,* 226 S.W.3d 425, 431 (Tex. Crim. App. 2007) (rejecting lower appellate court's conclusion that there was "no conceivable reason" for trial counsel's actions and stating that because record was silent on this point, defendant "failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable").

More specifically, this Court has declined to find trial counsel ineffective without a record allowing counsel an opportunity to explain his reasoning for failing to object to or move to suppress an in-court identification. *Greene v. State*, 124 S.W.3d 789, 791-92 (Tex. App. –Houston [1st Dist.],2003, pet. ref'd) (holding that appellant failed to meet the first prong of the Strickland test when there was nothing in the record to show why counsel chose not to attempt to have appellant's in-court identification suppressed when pre-trial "photo spread" consisted of a single photo). *Harris v. State*, No. 01–11–00415–CR, 2014 WL 1912539, at *6 (Tex. App.—Houston [1st Dist.] 2014) (mem. opin., not designated for publication) (finding defendant failed to overcome the strong presumption that

11

counsel's decision was based on trial strategy when the record was silent as to counsel's reasons for not filing a motion to suppress or object to in-court identification of appellant).

***2) Counsel was not ineffective since appellant cannot establish by clear and convincing evidence that a motion for new trial or objection to the evidence would have been successful.***

Appellant's point of error fails on an additional ground: the filing of a motion to suppress or objection to the pre-trial and in-court identifications would have been unsuccessful. A trial counsel's failure to file a motion to suppress or object to the admission of evidence is not per se ineffective assistance of counsel. *See Ingham v. State,* 679 S.W.2d 503, 509 (Tex. Crim. App. 1984); *Wert v. State,* 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] no pet.). Counsel is not required to engage in the filing of futile motions. *Mooney v. State,* 817 S.W.2d 693, 698 (Tex.Crim.App.1991). Rather, to satisfy the *Strickland* test and prevail on an ineffective assistance claim premised on counsel's failure to file a motion to suppress, an appellant must show by a preponderance of the evidence that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction. *Ortiz v. State,* 93 S.W.3d 79, 93 (Tex. Crim. App. 2002); *Jackson v. State,* 973 S.W.2d 954, 957 (Tex. Crim. App. 1998).

A defendant challenging the admissibility of a pre-trial or in-court identification has the burden to prove by clear and convincing evidence that (1) the out-of-court identification procedure was impermissibly suggestive and, if so, (2) the improperly suggestive pre-trial identification procedure created a very substantial likelihood of irreparable misidentification of the defendant. *Neil v. Biggers,* 409 U.S. 188, 198 (1972); *Santos v. State,* 116 S.W.3d 447, 455 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

Appellant admits in his brief that "there is nothing in the record to suggest that the photo array was suggestive." (appellant's brief, p. 15). Appellant is correct; Fusilier viewed the photo array after having been given proper warnings, the array was presented by an officer who did not even know which photos were of suspects, and the photos were of individuals who looked much like appellant (RR3-133, State's Exhibit 5-7). Appellant, however, suggests that a motion to suppress the pre-trial identification would have been successful because Fusilier made only a "strong tentative" identification and gave an inaccurate description of her attacker (appellant's brief, p 15). These circumstances go only to the weight of the evidence, not its admissibility. *See Jackson v. State*, 657 S.W.2d 123 (Tex. Crim. App.1983) (holding fact that witness had identified six of ten photographs as being that of individual who had taken motorcycle when only one of the six

photographs was that of defendant went to weight and not admissibility of her identification testimony).

Similarly, appellant has not shown that Fusilier's in-court identification of appellant was based on suggestive pre-trial identification procedures. Defense counsel questioned Fusilier at length about her pre-trial identification of appellant from the photo array (RR3-86-91, 96-97). At the conclusion of his examination he asked if she had met or talked with the prosecutor about the case (RR3-100). Fusilier said they had met a week ago (RR3-101). The defense then asked if Fusilier had seen any photographs of appellant that day (RR3-101). Fusilier replied that she had seen two (RR3-101). She also agreed that she had seen photographs of appellant before that (presumably when viewing the photo array) and that she had seen all these photos before making her in-court identification (RR3-101).

This testimony, without more, does not indicate that Fusilier's in-court identification of appellant was influenced by an impermissibly suggestive pretrial identification. There is no testimony as to whether the prosecutor simply showed Fusilier the original photo array at their meeting, whether the photos of appellant were mixed in with photos of others for a second identification, or whether Fusilier even identified appellant from these photos. *See Jackson v. State*, 973 S.W.2d at 957 (holding that to prevail on a claim of ineffective assistance of counsel the

appellant had the burden to develop facts and details sufficient to conclude evidence should have been suppressed).

Finally, even if the pre-trial identification procedure was suggestive in this case, Fusilier's in-court identification would still be admissible, as appellant did not establish that any pretrial identification gave rise to a substantial likelihood of irreparable misidentification. If the court finds that the pretrial procedure was impermissibly suggestive, then the defendant must show by clear and convincing evidence that the impermissibly suggestive pretrial procedure tainted the in-court identification. *Gamboa v. State*, 296 S.W.3d 574, 582 (Tex. Crim. App. 2009); *Jackson,* 657 S.W.2d at 127. Factors to be considered when making this review are: 1) the witness's opportunity to view appellant at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description of the criminal; 4) the witness's level of certainty at the time of confrontation; and 5) the length of time between the offense and the confrontation. *Id.; Loserth v. State,* 963 S.W.2d 770, 771–72 (Tex. Crim. App. 1998).

It was broad daylight when appellant walked towards Fusilier, and he passed within a mere two feet of her (RR3-49-50)  Fusilier testified that she got a good look at appellant before he hit her (RR3-52). While appellant alleges that the description given by Fusilier did not match appellant's appearance, the record is unclear.  Fusilier's description as given to the police was never introduced, nor do

we have a picture of appellant as he appeared in court. The offense occurred November 1, 2013, while the trial took place on July 30, 2014, making the length of time between the offense and the confrontation less than nine months (RR3-1, 18). As for Fusilier's level of certainty (perhaps the most important factor), she stated that after seeing appellant in person, she "strongly" believed that he was a person who had attacked her (RR3-56). Weighing these factors against the corrupting effect of the hypothetically suggestive pretrial identification, the trial court could have concluded that no substantial risk of irreparable misidentification was created and that the in-court identification was admissible.

Appellant has not shown that the trial court would have granted any motion to exclude his pre-trial or in-court identification. *Jackson,* 973 S.W.2d at 957 (holding that to prevail on a claim of ineffective assistance, appellant is "obliged to prove that a motion to suppress would have been granted"). He has thus failed to establish that he received ineffective assistance of counsel. *Id.*

For all the above reasons, appellant's second point of error is without merit and should be overruled.

———————◆———————

## **PRAYER**

The State respectfully requests that this Court affirm the judgment of the trial court.

**DEVON ANDERSON**
District Attorney
Harris County, Texas


/s/ *Kimberly Stelter*

**KIMBERLY APERAUCH STELTER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
State Bar Number:19141400
stelter_kimberly@dao.hctx.net

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument is being served by

EFileTXCourts.Gov e-filer to the following email address

Mandy Miller
Attorney at Law
2910 Commercial Ctr.Blvd. Ste 103-201
Katy, Texas  77494
mandy@mandymillerlegal.com

/s/ *Kimberly Aperauch Stelter*

**KIMBERLY STELTER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
State Bar Number: 19141400
stelter_kimberly@dao.hctx.net

# CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of **4,530** words, based upon the representation provided by the word processing program that was used to create the document.

/s/ *Kimberly Aperuach Stelter*

**KIMBERLY STELTER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002-1923
(713) 755-5826
TBC No. 19141400
stelter_kimberly@dao.hctx.net